CLOSED,E-Filing

# U.S. District Court
## California Northern District (San Francisco)
## CRIMINAL DOCKET FOR CASE #: 3:23-mj-70348-MAG-1

| | |
|---|---|
| Case title: USA v. Krezoub | Date Filed: 03/24/2023 |
| Other court case number: 8:23-mj-00164-DUTY Central District of California | Date Terminated: 03/30/2023 |

Assigned to: Magistrate Judge

*8:23-MJ-00164-DUTY*

**Defendant (1)**

**Anastassia Krezoub**
*TERMINATED: 03/30/2023*

FILED
CLERK, U.S. DISTRICT COURT

MAR 3 1 2023

CENTRAL DISTRICT OF CALIFORNIA
BY DNE                    DEPUTY

represented by **Angela Chuang**
Office of the Federal Public Defender
450 Golden Gate Ave., Floor 19
San Francisco, CA 94102
(415) 436-7700
Fax: (415) 436-7706
Email: angela_chuang@fd.org
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Public Defender or Community*
*Defender Appointment*

**Pending Counts**                                    **Disposition**
None

**Highest Offense Level (Opening)**
None

**Terminated Counts**                                 **Disposition**
None

**Highest Offense Level (Terminated)**
None

**Complaints**                                        **Disposition**
18:2261A(2)(B) - Stalking

---

**Plaintiff**
**USA**

represented by **David J. Ward**
U.S. Department of Justice, Antritrust Divsion
San Francisco Field Office
450 Golden Gate Avenue
Room 10-0101, Box 36046
San Francisco, CA 94102
415-934-5300
Fax: 415-934-5300
Email: david.ward@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

Designation: Assistant US Attorney

**George Hageman**
DOJ-USAO
450 Golden Gate Avenue
San Francisco, CA 94102
415-436-6511
Email: george.hageman@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
Designation: Assistant US Attorney

| Date Filed | # | Docket Text |
|---|---|---|
| 03/24/2023 | 1 | Notice of Proceedings on Out-of-District Criminal Charges Pursuant to Rules 5(c)(2) and (3) of the Federal Rules of Criminal Procedure as to Anastassia Krezoub (1). (Attachments: # 1 Attachment 1 Criminal Complaint) (mjj2, COURT STAFF) (Filed on 3/24/2023) (Additional attachment(s) added on 3/24/2023: # 2 Arrest Warrant) (mjj2, COURT STAFF). (Entered: 03/24/2023) |
| 03/24/2023 | | CASE DESIGNATED for Electronic Filing. (mjj2, COURT STAFF) (Filed on 3/24/2023) (Entered: 03/24/2023) |
| 03/24/2023 | | Arrest of Anastassia Krezoub in Northern District of California. (mjj2, COURT STAFF) (Filed on 3/24/2023) (Entered: 03/24/2023) |
| 03/27/2023 | 2 | CLERK'S NOTICE SETTING HEARING as to Anastassia Krezoub Initial Appearance set for 3/27/2023 at 10:30 AM in San Francisco, Courtroom 14, 18th Floor before Magistrate Judge Lisa J. Cisneros. *(This is a text-only entry generated by the court. There is no document associated with this entry.)* (bns, COURT STAFF) (Filed on 3/27/2023) (Entered: 03/27/2023) |
| 03/27/2023 | 3 | Minute Entry for proceedings held before Magistrate Judge Lisa J. Cisneros: Initial Appearance as to Anastassia Krezoub held on 3/27/2023; Added attorney David J. Ward for USA, Angela Chuang for Anastassia Krezoub. The defendant waives an identity/removal hearing, counsel will file the waiver after court. Proffers heard. The Court heard from Brian J. Stretch, counsel for the victim in the complaint. Government's motion to set a detention hearing under 18 USC 3142(f)(2) granted, following arguments presented by the Government, defense, and victim's counsel. Detention Hearing set for 3/30/2023 10:30 AM in San Francisco, Courtroom 14, 18th Floor before Magistrate Judge Lisa J. Cisneros. Recording Time Liberty 10:33-10:52. (mjj2, COURT STAFF) (Filed on 3/27/2023) (Entered: 03/28/2023) |
| 03/27/2023 | 4 | CJA 23 Financial Affidavit by Anastassia Krezoub (mjj2, COURT STAFF) (Filed on 3/27/2023) (Entered: 03/28/2023) |
| 03/29/2023 | 7 | MOTION *FOR DETENTION* by USA as to Anastassia Krezoub. (Ward, David) (Filed on 3/29/2023) (Entered: 03/29/2023) |
| 03/30/2023 | 9 | Minute Entry for proceedings held before Magistrate Judge Lisa J. Cisneros: Detention Hearing as to Anastassia Krezoub held on 3/30/2023; The Court grants the Government's motion to file under seal (Doc No. 8). Proffers heard. The defendant waives an identity/removal hearing and preliminary hearing. The defendant waives her right to an identity/removal hearing and preliminary hearing. The defendant waives a written order and formal findings. The Court directs the USMS to be in touch with Santa Rita Jail about providing the defendant medical attention. Recording Time Liberty 10:28-10:54. (mjj2, COURT STAFF) (Filed on 3/30/2023) (Entered: 03/30/2023) |
| 03/30/2023 | 10 | WAIVER of Rule 5 & 5.1 Hearings by Anastassia Krezoub (mjj2, COURT STAFF) (Filed on 3/30/2023) (Entered: 03/30/2023) |
| 03/30/2023 | 11 | **COMMITMENT TO ANOTHER DISTRICT as to Anastassia Krezoub. Defendant committed to Central District of California. Signed by Magistrate Judge Lisa J. Cisneros on 3/30/2023. (mjj2, COURT STAFF) (Filed on 3/30/2023) (Entered: 03/30/2023)** |

| 03/30/2023 | 12 | NOTICE OF CRIMINAL CASE TRANSFER. |
| | | Case transfer from California Northern to Central District of California of a Rule 5, Rule 32, or Rule 40 Appearance as to Anastassia Krezoub. Your case number is: 8:23-mj-00164-DUTY. Public transfer documents are accessible and can be retrieved by your court via PACER. Under seal or otherwise restricted documents will be emailed directly. Please send acknowledgement of receipt, including the case number, to InterDistrictTransfer_CAND@cand.uscourts.gov *If you wish to designate a different email address for future transfers, send your request to the national list host at InterDistrictTransfer_TXND@txnd.uscourts.gov.* (mjj2, COURT STAFF) (Filed on 3/30/2023) (Entered: 03/30/2023) |

ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

GEORGE O. HAGEMAN (CABN 332457)
Assistant United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-6511
Fax: (415) 436-7234
George.Hageman@usdoj.gov

Attorneys for United States of America

FILED

Mar 24 2023

Mark B. Busby
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ANASTASSIA KREZOUB,<br><br>Defendant. | CASE NO. 3:23-mj-70348 MAG<br><br>NOTICE OF PROCEEDINGS ON OUT-OF-DISTRICT CRIMINAL CHARGES PURSUANT TO RULES 5(c)(2) AND (3) OF THE FEDERAL RULES OF CRIMINAL PROCEDURE |

Please take notice pursuant to Rules 5(c)(2) and (3) of the Federal Rules of Criminal Procedure that on March 24, 2023, the above-named defendant was arrested pursuant to an arrest warrant (copy attached) issued upon an

☐    Indictment

☐    Information

X    Criminal Complaint

☐    Other (describe) _____

pending in the Central District of California, Case Number 8:23-mj-00164-DUTY.

In that case (copy of complaint attached), the defendant is charged with a violation of 18 U.S.C. § 2261A(2)(B).

1  Description of Charges: The defendant is charged with stalking the victim by sending repeated

2  threatening and harassing voicemails and text messages (including 7900 in one month alone) to the

3  victim, the victim's employer, and the victim's family.  The defendant additionally requested that the

4  victim provide her gifts to avoid further damage to the victim's reputation.

5       The maximum penalties are as follows: not more than five years of imprisonment, a $250,000

6  fine, a $100 special assessment, three years of supervised release, restitution, and forfeiture.

7

8                                       Respectfully Submitted,

9                                       ISMAIL J. RAMSEY

10                                   UNITED STATES ATTORNEY

11  Date: March 24, 2023                   */s/ George O. Hageman*

12                                   GEORGE O. HAGEMAN
                                        Assistant United States Attorney

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ATTACHMENT 1 CRIMINAL COMPLAINT

AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)    ☐ Original    ☐ Duplicate Original

# UNITED STATES DISTRICT COURT

for the

Central District of California

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | |
| ANASTASSIA KREZOUB, | Case No. 8:23-mj-00164-DUTY |
| Defendant(s) | |

FILED
CLERK, U.S. DISTRICT COURT
3/20/2023
CENTRAL DISTRICT OF CALIFORNIA
BY Velecia Musse DEPUTY

LODGED
CLERK, U.S. DISTRICT COURT
3/20/2023
CENTRAL DISTRICT OF CALIFORNIA
BY: CO DEPUTY

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of December 5, 2021 through January 31, 2023 in the county of Orange in the Central

District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2261A(2)(B) | Stalking |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

_____
*/s/ Steven C. Wrathall*
*Complainant's signature*

Steven C. Wrathall, FBI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone

Date:    3/20/23

_____
*Judge's signature*

City and state:   Los Angeles, California

Hon. Charles F. Eick, U.S. Magistrate Judge
*Printed name and title*

AUSA Andrew M. Roach, (213) 894-0306

**AFFIDAVIT**

I, Steven C. Wrathall, being duly sworn, declare and state
as follows:

## I.    BACKGROUND OF AFFIANT

1.    I am a Special Agent with the Federal Bureau of
Investigation ("FBI"), and have been so employed since February
2009.  I have worked on the FBI's Violent Crimes squad in Orange
County since 2012 and have experience working a variety of
violent crime offenses, including crimes involving children,
fugitives, death threats, and murder for hire, among others.
I am also currently assigned to the Orange County Violent Crime
Task Force, which is composed of federal and local law
enforcement agencies and is responsible for, among other things,
locating violent fugitives and investigating violent crime.

## II.  PURPOSE OF AFFIDAVIT

2.    This affidavit is made in support of a criminal
complaint and arrest warrant for ANASTASSIA KREZOUB ("KREZOUB")
for a violation of 18 U.S.C. § 2261A(2)(B) (Stalking).

3.    The facts set forth in this affidavit are based upon
my personal observations, my training and experience, and
information obtained from other agents and witnesses.  This
affidavit is intended to show merely that there is sufficient
probable cause for the requested warrant and does not purport to
set forth all of my knowledge of or investigation into this
matter.  Unless specifically indicated otherwise, all
conversations and statements described in this affidavit are
related in substance and in part only, all amounts or sums are

1

approximate, and all dates and times are on or about those indicated.

### III. **SUMMARY OF PROBABLE CAUSE**

4.      The FBI is investigating ANASTASSIA KREZOUB for stalking a victim residing within the Central District of California (the "victim").  Between August 2021 and November 2021, KREZOUB, a then-resident of Boston, Massachusetts, and the victim had a brief romantic relationship, seeing each other when the victim would visit Boston.  In October and November 2021, however, the relationship changed when KREZOUB started to accuse the victim of taking photos of her without her permission, and request the victim buy her expensive gifts and other items. When the victim did not comply with the requests, KREZOUB began to send threatening and harassing text messages and voicemails.

5.      The victim attempted to cut contact with KREZOUB in December 2021.  He blocked her known numbers and did not respond to her text messages or voicemails.  Nonetheless, KREZOUB continued to send threatening messages and voicemails to the victim for well over a year, including through the present day, through various different phone numbers and via email.  Between December 2022 and early January 2023 alone, KREZOUB sent approximately 7,900 harassing text messages to the victim, despite receiving no response from the victim.  In addition, KREZOUB sent harassing messages to the victim's employer and filed two police reports against the victim, first alleging that he took photos without her consent and, later on, alleging that the victim sexually assaulted her.

2

6.   In late January 2023, the victim reinitiated contact with KREZOUB at the FBI's request.  This was the first communication that the victim sent KREZOUB in approximately a year.  During subsequent communications, KREZOUB requested that the victim give her gifts to avoid further damage to his or his family's reputation.

### IV.  STATEMENT OF PROBABLE CAUSE

7.   Based on my interview of the victim, my review of documents and materials provided by the victim and his counsel, and my review of the other relevant documents, I am aware of the following information:

A.   The Victim's Relationship with KREZOUB

8.   The victim met with the FBI and provided the following chronology of his relationship with KREZOUB as well as extensive text messages documenting their text conversations:

a.   On August 24, 2021, the victim met KREZOUB in the lobby of a hotel in Boston, Massachusetts.  At the time, the victim -- a wealthy businessman from Southern California -- was visiting Boston.  The victim described KREZOUB as a sophisticated, multi-lingual, and well-traveled Ukrainian woman between 26 and 30 years old.  KREZOUB and the victim spoke for approximately an hour in the hotel lobby, exchanged phone numbers, and agreed to go to dinner.

b.   A few days later, the victim and KREZOUB had dinner at a Boston restaurant.  After dinner, KREZOUB and the victim returned to his hotel room where he reported that they had consensual sex.  The victim reported that KREZOUB gave no

3

indication that she did not want to have sex, nor did he give
her any money for sex.  Over the next few days, the victim and
KREZOUB met approximately three or four times and continued
their dating relationship while he was in Boston.  They had
consensual sex on one or two additional occasions.

         c.   The victim returned to Boston again in September
and October 2021.  During these visits, the victim met KREZOUB a
handful of times for dinners and dates.  They also had
consensual sex on approximately two to four more occasions.  The
victim reported that all of their sex was consensual.  He
further stated that he never paid KREZOUB for any sex, nor did
he engage in anal sex with KREZOUB.

         d.   The victim and KREZOUB also exchanged texts and
calls with each other during this time, including when they were
apart.

         e.   Around the end of October or early November 2021,
the victim started to question KREZOUB's motivations as she
began to ask him to purchase expensive items for her.  The
victim reported that he never gave KREZOUB any gifts or money,
however, he paid for dinners when they went out and purchased
her flowers once.  The victim reported that KREZOUB never
specifically demanded money during their brief relationship.
Instead, she requested expensive gifts such as jewelry.  At that
point, the victim began to think that she might be trying to
scam him.  The victim reported that he was in the process of
getting a divorce when he met KREZOUB.  He stated that financial
documents showing his approximate net worth were publicly filed

4

in his divorce in October 2021.  The victim believed that
KREZOUB obtained those documents as he stated that KREZOUB later
referenced his divorce filings in harassing messages and
voicemails.

       f.   In November 2021, KREZOUB's tone and demeanor
toward the victim in her text messages and phone calls changed.
She began to become hostile towards him.  She also accused the
victim of taking photos of her without her consent.  The victim
denied ever doing so.

       g.   In December 2021, KREZOUB filed a police report
with the Boston Police Department alleging that the victim had
taken pictures of her without her permission.  In his interview
with the FBI, the victim denied ever taking photos of KREZOUB
without her consent.

       h.   In approximately mid-December 2021, the victim
blocked KREZOUB's phone number in response to her harassing
behavior.  But after blocking KREZOUB's phone number, the victim
began receiving similar text messages from other phone numbers.
The messages were similar in tone and tenor, leading him to
believe that the sender was KREZOUB.  The victim continued to
block these new phone numbers.  Each time the victim blocked a
phone number, however, he would receive similar messages from
different numbers or email accounts, leading him to believe that
KREZOUB was sending him messages by frequently acquiring new
numbers or accounts.

       i.   In approximately December 2021, the victim's
adult daughter and his ex-wife told him that they had been

5

contacted on social media by individual(s) purporting to be the victim.  The victim reported that he did not create the social media accounts and he believed that KREZOUB had created these accounts.  The victim also reported that his ex-wife was contacted by someone pretending to be the victim via email.

j.  The victim reported that the last communication that he sent KREZOUB on his own initiative was sometime in December 2021.[1]  Despite the victim stopping all communications with KREZOUB around that time, the victim continued to receive harassing messages and voicemails from KREZOUB.  The victim estimated that he received thousands of unanswered texts and hundreds of unanswered voicemails from KREZOUB.

9.  The victim and his counsel provided the FBI with screenshots, a 903-page phone extraction report containing text messages the victim exchanged with KREZOUB, recorded voicemails from KREZOUB, and two separate data extractions from his personal cell phone containing the complete text chains with KREZOUB, as well as approximately 186 recorded voicemails.  I have reviewed these materials, which corroborate the victim's brief relationship with KREZOUB, the abrupt change in KREZOUB's behavior, and her numerous harassing messages.  Examples of the communications I reviewed include the following:

a.  In late August 2021, KREZOUB, texting from a phone number ending in 5969 ("the 5969 phone number"), and the victim exchanged text messages discussing dinner dates.  The

---

[1] As discussed more fully below, the victim reinitiated communication with KREZOUB in late January 2023, at the FBI's request, by responding to her repeated texts.

6

tone of the messages was friendly and flirtatious.  For
instance, on August 24, 2021, the victim and KREZOUB exchanged
introductory texts.  Four days later, KREZOUB wrote, "Thinking
about how much fun we had last night. . . would love to see you
again, but don't want to rush things."  Multiple texts were
exchanged about dinner plans and their dates.  On August 29,
2021, the victim wrote, "Miss you already.  Have a great rest of
the weekend."  KREZOUB responded, "Have safe travels, I miss
you."

       b.     Between September and October 2021, the victim
and KREZOUB exchanged additional texts in which they chatted,
exchanged flirtatious messages, and discussed the victim's
future trips to Boston.  KREZOUB sent texts like, "Miss u" and
"Do you know how cute you were falling asleep, I think I
should've taken a picture too!  Let's call some time soon baby."
KREZOUB also expressed excitement at the victim's pending
visits.  KREZOUB, for example, sent a text message on October
19, 2021, stating, "Are you in Boston soon to keep me warm?"

       c.     Approximately two hours after KREZOUB sent the
above message, KREZOUB then texted the victim, "Delete the naked
photos please.  I never gave anybody permission."  The victim
responded, "There are no photos."  The victim continued, "There
are no photos.  And no[,] don't know your point."  KREZOUB,
however, continued to text the victim accusing him of taking
photos of her without her permission, which the victim
repeatedly denied.  At one point, the victim stated, "No.  Sorry
you are wrong and I will press charges if I need too."  The

7

victim later wrote, "Nonsense.  Stop your [i]llegal nonsense and extortionist behavior or will have to take legal action."  He continued, "No.  Do you try to extort on a routine basis?  Do you pay taxes?"

d.    After the above interaction there appeared to be a three-week break in the text messages.  KREZOUB reinitiated contact on November 11, 2021.  KREZOUB and the victim both apologized for their previous statements.  KREZOUB told the victim, "Trust me you're beyond amazing."

e.    In late November 2021, KREZOUB and the victim discussed her potentially traveling to Southern California.  She texted the victim, "I prefer shopping, does Fashion Island in Newport ha[ve] a jewelry and dress stores?  Will definitely put me in a pleasant mood!!"  The victim did not respond to this text.  KREZOUB then sent dozens of additional texts in quick succession disparaging the victim and his family.  KREZOUB wrote, "Want to fuck?  Call Amex we go shopping or otherwise go meet some bitch . . . ."

f.    According to the victim, KREZOUB never traveled to Southern California and the last time he saw her in person was around October 2021.

g.    Between late November and December 2021, KREZOUB, continuing to use the 5969 phone number, sent the victim hundreds of harassing texts.  For example, she sent messages calling the victim a "bitch" and stating, among other things, "You should pay me," "Fuck you, I don't fuck for dinner," and she continued to disparage his family.

8

h.   The victim responded to a few of KREZOUB's texts and told her to stop sending him messages.  For example, on December 5, 2021, the victim texted, "Stop abusing me.  Stop abusing me.  Stop.  Get out your unhealthy fire breathing self for a few minutes. . . .  And get some help before you hurt yourself or some one else."

i.   Between December 12 and December 14, 2021, the victim started to receive new harassing texts from phone numbers ending in 6066 ("the 6066 phone number"), 8880 ("the 8880 phone number"), and 5657 ("the 5657 phone number").  The content of the messages was similar to those received from KREZOUB on the 5969 phone number.  Below are some additional examples:

i.   On December 13, 2021, the victim received a text from the 6066 phone number stating, "You have my address babe?  I need new Chanel bag in pink I don't F with broke. . . . I'm too pretty for this treatment."  Later on, she wrote, "Never had problems being complaint.  Depends what I'm offered."

ii.   On December 14, 2021, the victim received a text from the 8880 phone number stating, "You think I make scandals to men who treat me properly? . . .  You should pay me to have sex . . . .  Fuck you . . . .  I'll find your enemies and will be very friends with them."

iii.  On December 15, 2021, the victim received a text from the 5657 phone number stating, "Real men show what they are worth to a woman to earn her respect . . . .  And you don't even pick me up or offer a fur when I'm cold or new earrings when I kindly ask."

9

j.    The victim did not respond to these texts.

k.    Seven days later, on December 20, 2021, victim received a text from the 6066 phone number, which included a portion of a report naming the victim as a suspect in a domestic violence case.  The text stated, "Go pick up your police report."  The victim responded, "No YOU are the criminal.  You are going to pick up your report.  Liar.  Illegal con artist. Swindler and 100 times worse.  You try extortion.  Sorry. Illegal here.  Go away.  Go back to where you can do these things and where people accept it.  Not here."

l.    On December 15, 2021, the victim received text messages from the email address of anastassiausa@icloud.com stating, "You come off as someone who's paying the life of an old ex, lol, I'm too much and out of your league to fuck for food, take a bitch to dinner to fucl [sic].  You don't deserve me, look at me?  You're jealous men look at me when we're out."

m.    Also, on December 16, 2021, the victim started to receiving harassing texts from the email address of laradesa06@gmail.com, stating:

> I regret I had sex with you because of the way you treat me after . . . .  Not even a decent date . . . . I am sorry, but I was not pleased meeting someone who comes empty handed and doesn't take care of me properly . . . .  If you want to keep seeing me even casually, we can talk about my maintenance, rent, beauty and shopping expenses I need to be beautiful to meet.  Otherwise, plenty of very successful men will be happy to take care of their dear and keep her sweat and tight.  I don't want to waste myself.  sorry. . . .  I don't feel your love at all with me. . . .  I cannot have sex with every man who wants me, men wh0o send me 500 roses or offer me trips, maybe I should accept because you neglect me. . . .  And I asked like a small gift you tell me to F off.

10

n.   On December 21, 2021, the victim texted the following in response:

> Stop abusing me and lying all the time. I don't know what is wrong with you. Stop and leave me alone. Have said many times before. Do not contact me again. And do not menace me or family again. And do not troll[.] Just stop and go find somebody else to play your problems out on.

The victim later texted, "I keep blocking numbers but you keep faking. Surely there are more Men you can abuse." Later, KREZOUB texted the victim stating that he anally raped her.

o.   KREZOUB continued to text the victim in a similar manner and state that he anally raped her.

p.   KREZOUB also left recorded voicemails to a similar effect. I have listened to some of these recordings and the content is similar to the text messages.

B.   <u>Victim Sends a Cease-and-Desist Letter to KREZOUB</u>

10.   The victim reported that his attorney emailed a cease-and-desist letter to KREZOUB on December 27, 2021. Based on my review of the letter, it was emailed to KREZOUB at the following email addresses: laradessa06@gmail.com, anastassiakrez@gmail.com, and anastassiausa@icloud.com. The letter demanded KREZOUB stop sending harassing messages to the victim and his family, expressly told her that "any and all communication from [her] is unwanted" and must stop, and warned that the victim would pursue legal action if KREZOUB did not cease her threatening communications.

11.   The victim's counsel provided me with several email responses to the cease-and-desist letter from

anastassiakrez@gmail.com, dated December 27, 2021, January 18, 2022, February 22, 2022, February 23, 2022, and March 12, 2022. As an example, on February 23, 2022, anastassiakrez@gmail.com sent a response to the cease-and-desist letter stating, "I am allowed to talk about being raped . . . . Alright I'm getting the story to the press and media." On March 12, 2022, anastassiakrez@gmail.com sent a response stating, "Are you kidding me? Have you seen him naked?"

    12.  KREZOUB continued to send harassing texts to the victim notwithstanding the cease-and-desist letter. For example, the texts the victim provided to the FBI show that the victim received hundreds of additional harassing texts after the cease-and-desist letter had been sent to KREZOUB in December 2021. Below are some additional examples:

    a.  On June 29, 2022, the victim received text messages from the 5657 phone number stating:

- ██ ████████████████████████
- "I want to see you cry, suffer,"
- ██ ██████████████████████████
  ████████
- "I want to commit suicide,"
- "You are about to live your worse nightmares,"
- ████████████████████████████████
- ████████████████████████████████████
  ███████████
- ████████████████████████████████████████
  █████████████████

12



- "YOUR nightmares are about to start since you asked for it,"



and

        b.    On June 29, 2022, the victim also received back-to-back text messages from the 5657 phone number that read, "Get out of the building" and "Before it gets blown up LOL."

        c.    On June 30, 2022, the victim received a text message from the 5657 phone number that stated, "Yes buy me Chanel bitch if you want me to get excited to see you, bitch! . . . . Only thing that excite me is kick your ASS . . . . Burn your house in [city]."

        d.    More recently, on December 1, 2022, the victim began receiving texts from a phone number ending in 2575 ("the 2575 phone number").  Between December 1, 2022, and January 13,

2023, the victim received approximately 7,900 harassing text messages from the 2575 phone number.  Below are some examples:

    i.  Multiple photos of a close-up picture of a human rectum.

    ii.  Multiple photos of graphic pornographic images.

    iii. Multiple text messages referencing graphic sex acts with members of the victim's family.

    iv.  Multiple messages threatening reputational damage against the victim and his family.  For example, on December 3, 2022, the victim received text messages that stated, "All of you will be embarrassed on fucking National TV . . . . CNBC, CNN, Bloomberg, Yahoo TV."

    C.  <u>The Victim and His Employer Receive Harassing Emails</u>

13.  In addition, both the victim and his employer reported that they began to receive harassing messages from various email accounts in June 2022.  These emails were believed to be from KREZOUB based on their similarity in tenor and tone and references to past events, such as her prior text messages.  The victim and his employer provided me with copies of these emails, which I have reviewed.  Below are examples of emails that the email address of laradesa06@gmail.com sent to the victim and others at his employer:

    i.  On August 31, 2022, laradesa06@gmail.com sent an email to the victim's employer, titled "[Victim's first and last name] | SEXUAL ASSAULT BATTERY, solicitation, audio depositions."  The email contained screenshots of a police

14

report filed with the Boston Police Department, dated December 16, 2021, alleging that the victim had taken non-consensual nude photos of KREZOUB and had threatened to have her kicked out of the country.

       ii.  On September 11, 2022, laradesa06@gmail.com sent an email to the victim's employer, titled "[Victim's first name] solicits to prostitution girls . . . ." The email contained screenshots of text messages between KREZOUB and the victim, a pornographic image of male genitalia, and a screenshot of a portion of the Boston Police Department report. The body of the email included the following text: "I never consented to meet for sex at any hotel. I was so drunk every time we met he would make me drink and take me to his room for unprotected sex. One of the last time I met him, he grabbed my wrist and forced himself inside of me, forcing me to anal sex, because 'I didn't wanted it.' If I wasn't afraid for my life at that hotel room and scared of him hitting me, I would've defended myself."

       iii. On November 19, 2022, laradesa06@gmail.com sent an email to victim's employer, titled "[Victim's first name] LOVES ANAL AND ** POOP FETISHES." This email contained a pornographic image of two men engaging in sexual activity.

       iv.  On January 12, 2023, laradesa06@gmail.com sent an email to victim's employer, titled "[Victim's first and last name] RAPED MY BRUTALLY." The email read, "HE FORCED ME TO ANAL VAGINAL ANAL WITHOUT ANY PROTECTION WITHOUT EVEN LUBRICANT OR PREPARING ME ONE DAY HE WAS ANGRY AT ME FOR RESISTING HE

15

GRABBED ME I WAS NOT ABLE TO MOVE BUT JUST LET HIM SODOMIZE ME UNTIL HE FINISH."

D.   KREZOUB's Police Reports Against the Victim

14.   The victim reported to me that KREZOUB filed multiple false police reports against him.  As part of the investigation, I reviewed copies of these police reports.

15.   The first police report that KREZOUB filed against the victim was on December 16, 2021, with the Boston Police Department.  This report matches the police report that KREZOUB referenced in her texts to the victim in December 2021.  According to the report, KREZOUB walked into the police station and reported that on her third date with the victim, "[S]he awoke to him taking photos of her while she was sleeping in the nude."  The report further stated that KREZOUB said that when "she attempted to break up with [the victim, he] stated he 'will get people to her home FBI and police' and that he 'will find her family and have them kicked out of the country.'"  KREZOUB made no mention of rape or any other form of sexual abuse in her police report.

16.   KREZOUB filed a second police report against the victim on March 23, 2022, with a local police department in Southern California.  According to the police report, KREZOUB stated that the victim took nude photos of her without her consent.  KREZOUB also stated that the victim attempted to have anal sex with her against her will.  The reporting officer's report also included a note regarding KREZOUB, specifically

16

stating that her "timeline and recount of the incidents did seem unclear and illogical at times."

17.     Based on my communications with both the Boston Police Department and the local police department in Southern California, neither are investigating these complaints against the victim.

         E.     FBI Interviews KREZOUB

18.     As part of the investigation, FBI agents from the Miami Field office telephonically interviewed KREZOUB on September 13, 2022, and November 13, 2022.  I have reviewed both of those interview reports and summarize them below.

19.     During her September 13, 2022 interview with the FBI, KREZOUB stated the following:

         a.     KREZOUB reported that she was a French national who has been living in the United States since 2018.  She mentioned that she previously lived in Boston, Massachusetts and Miami, Florida but was presently residing in San Francisco, California.  KREZOUB stated that she worked in fashion e-commerce.

         b.     KREZOUB stated that she met the victim in late August 2021 at a restaurant bar in Boston, Massachusetts. KREZOUB stated they conversed for several hours over drinks and that the victim asked her to come to his hotel room and offered her money, but she refused.  KREZOUB stated the victim texted her days later, inviting her to his hotel room.  KREZOUB stated that she refused again.  She mentioned that she met the victim for dinner.  Following dinner, KREZOUB stated she returned to

17

the victim's hotel room and they had sex.  KREZOUB stated that the victim paid her $400 to $500 for sex.  KREZOUB stated she went to dinner with the victim again a few days later and they had sex again.

        c.    KREZOUB stated that in September 2021, after a night out with the victim, she woke up to the victim taking pictures of her.

        d.    KREZOUB stated that in October 2021 she went on another date with the victim.  On this occasion, she reported that the victim sexually assaulted her in the morning with "forced penetration."  KREZOUB reported breaking off their relationship after that incident.

        e.    KREZOUB reported that she saw the victim a total of five or six times between August and October 2021.  She reported that the victim paid for all meals, sometimes over $1,000 per meal, and paid her $400 to $500 one time for sex.

        f.    KREZOUB reported that she filed a Boston Police Department report in December 2021 relating to the victim purportedly taking pictures of her.  She stated she did not tell the police about the sexual abuse at that time as, according to her, she did not want to report everything during the first report.  KREZOUB reported later informing the Boston Police Department about the sexual assault.[2]

        g.    KREZOUB stated that the victim threatened her in October 2021, after she sent him a message to delete the photos

_____

        [2] I am in the process of requesting all other reports from the Boston Police Department which KREZOUB may have filed against the victim, to the extent they exist.

18

that he took of her.  KREZOUB mentioned that the victim was scared he would lose his job if sexual assault allegations were made against him.  KREZOUB stated that she provided the Boston Police Department with screenshots of purportedly threatening texts but that the victim threatened her more often over the phone rather than in text.

        h.  KREZOUB acknowledged that the victim's attorney sent her a letter stating she made threats against the victim. KREZOUB, however, denied ever threatening the victim.

        20.  FBI agents telephonically interviewed KREZOUB again on November 7, 2022.  During the interview, KREZOUB stated the following:

        a.  KREZOUB stated that she called the FBI to complain that the victim had taken nude photos of her and that she filed multiple police reports against the victim.[3]  She said that she was told that no one could help her.

        b.  She stated that was in contact with a local detective in Southern California but declined to provide any more information.

        c.  KREZOUB refused to provide the FBI with her current address and stated that she did not want the FBI to investigate her complaint against the victim any further.

---

[3] I have reviewed FBI records and I did not find any complaint made or filed by KREZOUB.

F.   Further Investigation into KREZOUB Reveals Other Potential Stalking Victims

21.   During my investigation into KREZOUB, I identified other potential stalking victims, including victims in Florida and Boston, Massachusetts.

a.   Potential Florida Victim

i.   As part of his referral to law enforcement, the victim provided the FBI with a report on KREZOUB that was prepared by a private investigation firm.  The investigation firm identified a man in Florida as another subject of potential stalking by KREZOUB (the "Florida Victim").  The investigative report included online postings about the Florida Victim that included the email address of laradesa06@gmail.com.

ii.   I located and reviewed a request for a domestic violence restraining order that the Florida Victim filed against KREZOUB in Florida state court.  Based on the filing, the Florida Victim reported having a brief relationship with KREZOUB in 2019.  After their relationship ended, the Florida Victim reported that KREZOUB stalked him on a daily basis for over a year.  The Florida Victim reported that KREZOUB later emailed him and demanded money and defamed the victim's character.

iii. I attempted to interview the Florida Victim. The Florida Victim, however, declined to speak with me and indicated he had moved on with his life.

20

b.   Potential Boston Victim

i.   I also recently learned of another report of threatening behavior against KREZOUB.  This report came from the Boston Police Department, which provided me with a copy of the police report detailing the activity.  According to the Boston Police Department report, dated January 20, 2023, a Boston-area hotel filed a police report against "Anatasa Krezoub," who is believed to KREZOUB, for threatening its employees.  The hotel reported that the subject had contacted the hotel multiple times from the 5969 phone number and the email address of laradesa06@gmail.com.[4]  The hotel reported that the subject made, among other threats against hotel employees, the following statements:

- "I have the means to find anything I want, and destroy your life . . . ,"
- "I will go after you if I want to,"
- "Take a shower your hair is greasy nasty Arab,"
- "Ill come fuck you up if you talk to me like that nasty Arab," and
- "Don't fuck with me."

ii.   I have not interviewed the hotel employees or victims of these threats to date.

iii.  On March 16, 2023, the investigating detective from the Boston Police Department contacted me to

---

[4] Both this phone number and email address sent multiple threatening communications to the victim, as discussed above.

21

inform me that KREZOUB was still sending harassing messages to victims in Boston.

> G.   The Phone Numbers and Email Addresses Used to Stalk the Victim Come Back to KREZOUB

22.   Subscriber records received from Google for the email addresses of anastassiakrez@gmail.com and laradesa06@gmail.com show "Anastassia Krezoub" (KREZOUB) as the billing name associated with a Google Pay account connected to these email addresses.

23.   Similarly, records received from Apple show that the iCloud account anastassiausa@icloud.com was registered to an email address of laradesa06@gmail.com, and a person with the first name of "Anastassia," the last name of "K," and the 5969 phone number.

24.   Records received from AT&T Wireless showed that the 5969 phone number was subscribed to "Anastassia Krezoub" (KREZOUB) since November 12, 2020 at an account address in Boston, Massachusetts.

25.   Records from Bandwidth.com showed that the 5657 phone number was assigned to Ad Hoc Labs, Inc. doing business as Burner ("Burner").  Records subsequently received from Burner showed that the 5657 phone number was created and used by the 5969 phone number (registered to KREZOUB) between the dates of January 6, 2021, and November 3, 2022.

26.   I determined that the 6066 phone number, the 8880 phone number, and the 1480 phone number were assigned to

Bandwidth.com and Intelliquent.  I am in the processing of
requesting further subscriber records from those companies.

> H.    The Victim Reinitiates Contact with KREZOUB at the
>        FBI's Request

27.    In late January 2023, the victim reinitiated contact
with KREZOUB at the 2575 phone number at the request of the FBI.
During these communications, KREZOUB stated she would stop
harassing the victim if she received various luxury items and
"monthly support."  Below is a summary of the recent text
conversation the victim had with KREZOUB, which were provided to
me via a new digital extraction from the victim's cellphone.

28.    On January 25, 2023, the victim and KREZOUB had the
following text message conversation:

[VICTIM]:    I need this to stop.  You tell me what
             it takes and I need to know it all
             stops forever for me and family.  And
             what assurances can you give to stop?

[KREZOUB]:   Ok.  I will.

[KREZOUB]:   When I'm happy it's easy for me to shut
             up.

[VICTIM]:    I do not know what will make you happy.
             What will make you happy?  I need an
             action item What is it and how will I
             know you will stop and leave me and
             family alone?

[KREZOUB]:   I don't know what I can ask you.  What
             can I do so you are assured.

[VICTIM]:    I don't know.  You need to tell me what
             will make you happy.  And rest is after
             that.

[KREZOUB]:   Action Item of things that make me
             happy, guaranteed to keep me happier
             and/or will keep me happiest ever:

* Multiple Hermès bags of my choice (example : Black Birkin in Alligator 30, Gold Brown Birkin 25, Constance bag 18 in Alligator)

* Lady Dior size Small Alligator Finish in Blush color with Crystal Hardware

* Patek Philippe Watch 24H model Women's Rose Gold Diamond Bazel

* Vacherin Constantin Watch Women's Overseas Quartz Pink Gold

* Audemars Piguet Royal Oak Women's Rose Gold 33mm Frosted Finish

* Diamond Earrings + Diamonds Tennis Bracelet from Tiffany

* Cash for minor Rhinoplasty from Dr. [Name]

* Gold Bars

* Condo in Boston and/or Miami

* Newest Mercedes car

* Pomeranian Spitz Female Puppy + dogsitter & insurance fees

Feel Free to pick from this list.

[. . .]

[KREZOUB]:       This or sex scandal at your kids graduation.

29.  On January 31, 2023, the victim, at the request of law enforcement, made a recorded call to KREZOUB, which I have reviewed.  During the call, the victim asked if KREZOUB "would leave [him] and [his] family alone" if he gave her the requested items.  KREZOUB agreed.

24

    30.  Most recently, the victim's attorney reported to me that KREZOUB has continued to send threats to the victim, including threats of physical violence and reputational damage against the victim and his family.

## V.   CONCLUSION

    31.  For all the reasons described above, I submit there is probable cause to believe that KREZOUB violated 18 U.S.C. § 2261A(2)(B) (Stalking).


Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 20th day of
March, 2023.

_____
THE HONORABLE CHARLES F. EICK
UNITED STATES MAGISTRATE JUDGE

25

| DOCUMENTS UNDER SEAL ☐ | | TOTAL TIME (mins): 19M | |
|---|---|---|---|
| **MAGISTRATE JUDGE MINUTE ORDER** | DEPUTY CLERK Brittany Sims | REPORTER/FTR Liberty Recording: 10:33-10:52 | |
| MAGISTRATE JUDGE Lisa J. Cisneros | DATE March 27, 2023 | NEW CASE ☐ | CASE NUMBER 23-mj-70348-MAG |

### APPEARANCES

| DEFENDANT Anastassia Krezoub | AGE 26 | CUST Y | P/NP P | ATTORNEY FOR DEFENDANT Angela Chuang | PD. ☒ RET. ☐ APPT. ☐ |
|---|---|---|---|---|---|
| U.S. ATTORNEY Dave Ward | INTERPRETER | | ☒ FIN. AFFT SUBMITTED | ☒ COUNSEL APPT'D | |
| PROBATION OFFICER | PRETRIAL SERVICES OFFICER Josh Libby | | DEF ELIGIBLE FOR APPT'D COUNSEL ☒ | PARTIAL PAYMENT OF CJA FEES ☐ | |

### PROCEEDINGS SCHEDULED TO OCCUR

| ☒ INITIAL APPEAR Rule 5 | ☐ PRELIM HRG | ☐ MOTION | ☐ JUGM'T & SENTG | ☐ STATUS ☐ TRIAL SET |
|---|---|---|---|---|
| ☐ I.D. COUNSEL | ☐ ARRAIGNMENT | ☐ BOND HEARING | ☐ IA REV PROB. or or S/R | ☐ OTHER |
| ☐ DETENTION HRG | ☐ ID / REMOV HRG | ☐ CHANGE PLEA | ☐ PROB. REVOC. | ☐ ATTY APPT HEARING |

### INITIAL APPEARANCE

| ☒ ADVISED OF RIGHTS | ☒ ADVISED OF CHARGES | ☒ NAME AS CHARGED IS TRUE NAME | ☐ TRUE NAME: |
|---|---|---|---|

### ARRAIGNMENT

| ☐ ARRAIGNED ON INFORMATION | ☐ ARRAIGNED ON INDICTMENT | ☒ READING WAIVED SUBSTANCE | ☐ WAIVER OF INDICTMENT FILED |
|---|---|---|---|

### RELEASE

| ☐ RELEASED ON O/R | ☐ ISSUED APPEARANCE BOND | AMT OF SECURITY $ | SPECIAL NOTES | ☐ PASSPORT SURRENDERED DATE: |
|---|---|---|---|---|

| PROPERTY TO BE POSTED ☐ CASH $ | CORPORATE SECURITY ☐ | REAL PROPERTY: ☐ |
|---|---|---|

| ☒ MOTION FOR DETENTION | ☒ PRETRIAL SERVICES REPORT | ☐ DETAINED | ☐ RELEASED | ☐ DETENTION HEARING AND FORMAL FINDINGS WAIVED | ☒ REMANDED TO CUSTODY |
|---|---|---|---|---|---|

ORDER REMOVED TO THE DISTRICT OF

### PLEA

| ☐ CONSENT ENTERED | ☐ NOT GUILTY | ☐ GUILTY | GUILTY TO COUNTS: ☐ |
|---|---|---|---|
| ☐ PRESENTENCE REPORT ORDERED | ☐ CHANGE OF PLEA | ☐ PLEA AGREEMENT FILED | OTHER: |

### CONTINUANCE

| TO: 3/30/2023 | ☐ ATTY APPT HEARING | ☐ BOND HEARING | ☐ STATUS RE: CONSENT | ☐ TRIAL SET |
|---|---|---|---|---|
| AT: 10:30 a.m. | ☐ SUBMIT FINAN. AFFIDAVIT | ☐ PRELIMINARY HEARING | ☐ CHANGE OF PLEA | ☐ STATUS |
| BEFORE HON. Cisneros | ☒ DETENTION HEARING | ☐ ARRAIGNMENT | ☐ MOTIONS | ☐ JUDGMENT & SENTENCING |
| ☐ TIME WAIVED | ☐ TIME EXCLUDABLE UNDER 18 § USC 3161 | ☐ IDENTITY / REMOVAL HEARING | ☐ PRETRIAL CONFERENCE | ☐ PROB/SUP REV. HEARING |

### ADDITIONAL PROCEEDINGS

The defendant waives an identity/removal hearing, counsel will file the waiver after court. Proffers heard. The Court heard from Brian J. Stretch, counsel for the victim in the complaint. Government's motion to set a detention hearing under 18 USC 3142(f)(2) granted, following arguments presented by the Government, defense, and victim's counsel.

DOCUMENT NUMBER:

1  ISMAIL J. RAMSEY (CABN 189820)
   United States Attorney

2

3  THOMAS A. COLTHURST (CABN 99493)
   Chief, Criminal Division

4  DAVID J. WARD (CABN 239504)
   Assistant United States Attorney

5

6       450 Golden Gate Avenue, Box 36055
        San Francisco, California 94102-3495
        Telephone: (415) 436-7200

7       Facsimile: (415) 436-7234
        david.ward@usdoj.gov

8

   Attorneys for United States of America

9

                    UNITED STATES DISTRICT COURT

10

                   NORTHERN DISTRICT OF CALIFORNIA

11

                       SAN FRANCISCO DIVISION

12

13 UNITED STATES OF AMERICA,          )   CASE NO. 23-MJ-70348 MAG
                                       )
14         Plaintiff,                  )
                                       )
15     v.                              )   **MOTION FOR DETENTION**
                                       )
16 ANASTASSIA KREZOUB,                 )
                                       )
17         Defendant.                  )
                                       )
18 _____ )

19 **I.     Overview**

20         Defendant Anastassia Krezoub is a serial stalker, charged by a Criminal Complaint in the Central

21 District of California with one count of stalking a violation of 18 U.S.C. 2661A for a relentless, 13-

22 month barrage of threats and extortion demands directed at the victim.  This campaign of harassment

23 that has continued despite multiple warnings,  including a cease and desist letter and two FBI interviews.

24 *See Dkt. 1 (Complaint)*.  She is a Ukrainian national in the United States illegally on a French passport

25 and an expired visa. *See Dkt. 6* (Pretrial Bail Report).  She has no legitimate job, no ties to the Northern

26 District, and has resided here since October 2022. She has mental health issues, and a history of

27 international travel. *Id.* By her own admission she works as an escort (prostitute), earning $8,000 a

28

   MOTION FOR DETENTION
   23-MJ-70348 MAG                    1

1 | month in illicit income.  She is a danger to the community and a flight risk, and the government

2 | respectfully asks that she be detained and ordered transferred to the Central District of California.

3 | **II.    Defendant's Stalking and Threats**

4 | As charged in the Complaint,  for over the past year, the defendant has stalked and harassed the

5 | victim, a Southern California man.  *See Dkt. 1.*  She has sent thousands of vulgar, harassing, and

6 | offensive texts, along with hundreds of voicemails, as well as emails.  *Id.*  She has harassed the victim

7 | on his phone, through emails to his employer, and even through the filing of false police reports. *Id.*

8 | Worse yet, her harassment and extortionate behavior has continued despite warnings from law

9 | enforcement. *Id.*  Indeed, the FBI contacted defendant back in September 2022 and November

10 | 2022regarding the very stalking conduct now alleged in the Complaint.  *Id.*   Rather than take that

11 | warning to heart and cease her unlawful conduct, defendant continued to harass the victim, even

12 | stepping up for threats and harassment.  *Id.*   In under six weeks between December 2022 and January

13 | 2023 she sent over 7,900 harassing texts to the victim.  *Id.*  *M*ost recently, she has been even more

14 | aggressive in her threats to the victim and demanded that he provide her with expensive gifts or else she

15 | would cause a "sex scandal" for the victim.  *Id.*   The investigation into defendant revealed that the

16 | named victim in the complaint is not her only victim. *Id.*  The Complaint alleges at least two other

17 | known victims, in Florida and Massachusetts, who are also victims of defendant's stalking.  The

18 | defendant is a serial stalker.

19 | **III.    Defendant is a Flight Risk**

20 | According to defendant's financial affidavit and the Pretrial Bail Report, the defendant has no ties to

21 | the Northern District, no legitimate income, and ample financial resources to flee. *Dkt. 6.*  According to

22 | her own statements to Pretrial Services, the defendant has worked "for the last five years" as an escort,

23 | "wherever the defendant is living at the time." *Id.*  She reports no legitimate employment or income, yet

24 | disclosed that she has $7,000 in checking and savings accounts, another $7,000 in cash, and $11,000 in

25 | jewelry.  *Id.*  The defendant also admits that she was making approximately $8,000 a month from her

26 | escorting services.  *Id.*   The defendant stated to Pretrial that she has resided in the Northern District for

27 | less than six months, since October 2022, resided for six months in Newport Beach prior to that, in

28 | Boston for two years, Miami for two and a half years, and in France from 2000 to 2018. *Id.*  She reports

MOTION FOR DETENTION
23-MJ-70348 MAG                                      2

1  no family in the United States. According to Pretrial Services, Immigration and Customs Enforcement

2  (ICE) indicates that the defendant is not legally in the U.S. and is subject to removal proceedings. *Id.*

3  **IV.   Argument**

4      In light of the defendant's continued criminal conduct, substantial foreign ties, and lack of ties

5  and permanent life here in this country, the government requests that defendant be detained. She is a

6  clear flight risk and poses a continued danger to the victim and the community.

7      **a.  Legal Standards for Pretrial Detention**

8     A defendant must be detained pending trial where "no condition or combination of conditions will

9  reasonably assure the appearance of the person as required and the safety of any other person and the

10  community." 18 U.S.C. § 3142(e)(1). Detention is thus appropriate for a defendant who is either a

11  danger to the community or a flight risk. <u>United States v. Motamedi</u>, 767 F.2d 1403, 1406 (9th Cir.

12  1985). "On a motion for pretrial detention, the government bears the burden of showing by a

13  preponderance of the evidence that the defendant poses a flight risk." <u>United States v. Santos-Flores</u>,

14  794 F.3d 1088, 1090 (9th Cir. 2015), while danger to community must be proved by clear and

15  convincing evidence. 18 U.S.C. § 3142(f). "Danger to the community" does not mean just physical

16  danger – it also means the risk of "pecuniary or harm." <u>United States v. Reynolds</u>, 956 F.2d 192, 192

17  (9th Cir. 1992). "[T]he Bail Reform Act mandates an individualized evaluation guided by the factors

18  articulated in § 3142(g)." <u>United States v. Diaz-Hernandez</u>, 943 F.3d 1196, 1199 (9th Cir. 2019). Those

19  factors are:

20
21           (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence;

22           (2) the weight of the evidence against the defendant;

23           (3) the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history; and

24
25           (4) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release.

26  18 U.S.C. § 3142(g); <u>United States v. Winsor</u>, 785 F.2d 755, 757 (9th Cir. 1986) (per curiam) (citation

27  omitted). Consideration of non-statutory factors is disfavored. <u>Diaz-Hernandez</u>, 943 F.3d at 1199.

28  //

**b.  Defendant Presents a Substantial Risk of Flight**

Section 3142(g)(3).  Defendant does not have valid legal status to be in the United States.  *See Dkt. 6.*  She grew up overseas and was born in the Ukraine.  *Id.*  She arrived in the United States in January 2018, under a French passport, and was admitted under the visa waiver program, which allows visitors to stay for 90 days.  *Id .*  Rather than depart the United States as required, the defendant has remained in this country unlawfully, without legal status to work or reside.  *Id.*  Since arriving in the United States, she has lived throughout the country, including in Boston, Miami, Orange County, California, and now San Francisco.  *Id.*  Beyond her unlawful status, the government is not aware of any legitimate source of income for defendant, who, in any event, does not have legal status to work in the United States.  *Id.*  She also reports significant assets from her illicit income as a prostitute.

Given her lack of status, lack of permanent and lawful employment, lack of ties to the district, and no available bond resources, and illicit work, the government believes detention is warranted, as Pretrial Services has recommended.

**c.  Defendant is a Danger to the Community**

Section 3142(g)(1).  Defendant is charged with stalking one victim.  However, evidence in the complaint shows that she has engaged in a pattern of stalking and extortion of multiple victims.  *Dkt. 1.*  She has sent the victim thousands of graphic and abusive texts, threatening him and his family members with physical and reputational harm.  *Id.*  The threats have been serious, constant, and ongoing.  *Id.*  She has also filed two false police reports against the victim, as alleged in the complaint.  *Id.*  Worse yet, defendant has continued to commit the crime even though she was contacted by law enforcement twice, specifically, in September and November 2022.  *Id.*  The fact that she continued to reoffend and engage in stalking, even after contact from law enforcement, demonstrates that she is not amenable to court supervision, conditions, or other rules which would prevent her from committing the crime.  *Id.*  Beyond the instant offense, the complaint alleges other instances of stalking against other victims, including in Florida and Massachusetts, demonstrating that defendant is truly a serial stalker.  *Id.*

Section 3142(g)(2).  The weight of the evidence against defendant is incredibly strong.  The complaint alleges thousands of harassing texts and emails that defendant has sent the victim.

Section 3142(g)(4). Most concerning is the nature and seriousness of the risk that defendant poses to the victim in this case if defendant released. Defendant has an established track record of harassing the defendant, even despite law enforcement involvement. Most troublingly, in the days before her arrest, defendant demanded that the victim pay her money and buy her gold bars as compensation for her past FBI contact that resulted from the victim's report of stalking. In essence, she demanded that the victim now pay her even more as punishment for reporting her crimes, otherwise he would face, in her words, a "sex scandal." Given her history of anger, vitriol, and retribution, there is no telling how she will retaliate against the victim now if she is released.

Accordingly, for all these reasons, the government requests that defendant be detained, and ordered removed to the Central District of California.

Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

Dated: March 29, 2023

*/s/ David J. Ward*
DAVID J. WARD
Assistant United States Attorney

MOTION FOR DETENTION
23-MJ-70348 MAG                    5

| DOCUMENTS UNDER SEAL ☐ | | TOTAL TIME (mins): 26M | |
|---|---|---|---|
| **MAGISTRATE JUDGE MINUTE ORDER** | DEPUTY CLERK Brittany Sims | REPORTER/FTR Liberty Recording: 10:28- 10:54 | |
| MAGISTRATE JUDGE Lisa J. Cisneros | DATE March 30, 2023 | NEW CASE ☐ | CASE NUMBER 23-mj-70348-MAG |

### APPEARANCES

| DEFENDANT Anastassia Krezoub | AGE | CUST Y | P/NP P | ATTORNEY FOR DEFENDANT Angela Chuang | PD. ☒ RET. ☐ APPT. ☐ |
|---|---|---|---|---|---|
| U.S. ATTORNEY Dave Ward | INTERPRETER | | FIN. AFFT SUBMITTED ☐ | | COUNSEL APPT'D ☐ |
| PROBATION OFFICER | PRETRIAL SERVICES OFFICER Pepper Friesen | | DEF ELIGIBLE FOR APPT'D COUNSEL ☐ | | PARTIAL PAYMENT OF CJA FEES ☐ |

### PROCEEDINGS SCHEDULED TO OCCUR

| ☐ INITIAL APPEAR | ☐ PRELIM HRG | ☐ MOTION | ☐ JUGM'T & SENTG | ☐ STATUS ☐ TRIAL SET |
|---|---|---|---|---|
| ☐ I.D. COUNSEL | ☐ ARRAIGNMENT | ☐ BOND HEARING | ☐ IA REV PROB. or or S/R | ☐ OTHER |
| ☒ DETENTION HRG Held | ☐ ID / REMOV HRG | ☐ CHANGE PLEA | ☐ PROB. REVOC. | ☐ ATTY APPT HEARING |

### INITIAL APPEARANCE

| ☐ ADVISED OF RIGHTS | ☐ ADVISED OF CHARGES | ☐ NAME AS CHARGED IS TRUE NAME | ☐ TRUE NAME: |
|---|---|---|---|

### ARRAIGNMENT

| ☐ ARRAIGNED ON INFORMATION | ☐ ARRAIGNED ON INDICTMENT | ☐ READING WAIVED SUBSTANCE | ☐ WAIVER OF INDICTMENT FILED |
|---|---|---|---|

### RELEASE

| ☐ RELEASED ON O/R | ☐ ISSUED APPEARANCE BOND | AMT OF SECURITY $ | SPECIAL NOTES | ☐ PASSPORT SURRENDERED DATE: |
|---|---|---|---|---|
| PROPERTY TO BE POSTED ☐ CASH $ | | CORPORATE SECURITY ☐ | REAL PROPERTY: ☐ | |
| ☐ MOTION FOR DETENTION | ☐ PRETRIAL SERVICES REPORT | ☒ DETAINED | ☐ RELEASED | ☐ DETENTION HEARING AND FORMAL FINDINGS WAIVED | ☒ REMANDED TO CUSTODY |

ORDER REMOVED TO THE DISTRICT OF Central District of California

### PLEA

| ☐ CONSENT ENTERED | ☐ NOT GUILTY | ☐ GUILTY | GUILTY TO COUNTS: ☐ |
|---|---|---|---|
| ☐ PRESENTENCE REPORT ORDERED | ☐ CHANGE OF PLEA | ☐ PLEA AGREEMENT FILED | OTHER: |

### CONTINUANCE

| TO: | ☐ ATTY APPT HEARING | ☐ BOND HEARING | ☐ STATUS RE: CONSENT | ☐ TRIAL SET |
|---|---|---|---|---|
| AT: | ☐ SUBMIT FINAN. AFFIDAVIT | ☐ PRELIMINARY HEARING | ☐ CHANGE OF PLEA | ☐ STATUS |
| BEFORE HON. | ☐ DETENTION HEARING | ☐ ARRAIGNMENT | ☐ MOTIONS | ☐ JUDGMENT & SENTENCING |
| ☐ TIME WAIVED | ☐ TIME EXCLUDABLE UNDER 18 § USC 3161 | ☐ IDENTITY / REMOVAL HEARING | ☐ PRETRIAL CONFERENCE | ☐ PROB/SUP REV. HEARING |

### ADDITIONAL PROCEEDINGS

The Court grants the Government's motion to file under seal (Doc No. 8). Proffers heard. The defendant waives her right to an identity/removal hearing and preliminary hearing. The defendant waives a written order and formal findings. The Court directs the USMS to be in touch with Santa Rita Jail about providing the defendant medical attention.

DOCUMENT NUMBER:

AO 466A (Rev. 12/17)  Waiver of Rule 5 & 5.1 Hearings (Complaint or Indictment)

# UNITED STATES DISTRICT COURT
### for the
Northern District of California

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. 23-mj-70348 |
| | ) | |
| Anastassia Krezoub | ) | Charging District's Case No. 23-mj-164 |
| _Defendant_ | ) | |

## WAIVER OF RULE 5 & 5.1 HEARINGS
### (Complaint or Indictment)

I understand that I have been charged in another district, the _(name of other court)_ Central District of California.

I have been informed of the charges and of my rights to:

(1)    retain counsel or request the assignment of counsel if I am unable to retain counsel;

(2)    an identity hearing to determine whether I am the person named in the charges;

(3)    production of the warrant, a certified copy of the warrant, or a reliable electronic copy of either;

(4)    a preliminary hearing to determine whether there is probable cause to believe that an offense has been committed, to be held within 14 days of my first appearance if I am in custody and 21 days otherwise, unless I have been indicted beforehand.

(5)    a hearing on any motion by the government for detention;

(6)    request a transfer of the proceedings to this district under Fed. R. Crim. P. 20, to plead guilty.

I agree to waive my right(s) to:

☒    an identity hearing and production of the warrant.

☒    a preliminary hearing. In this district.

☐    a detention hearing.

☐    an identity hearing, production of the judgment, warrant, and warrant application, and any preliminary or detention hearing to which I may be entitled in this district.  I request that my
☐ preliminary hearing and/or ☐ detention hearing be held in the prosecuting district, at a time set by that court.

I consent to the issuance of an order requiring my appearance in the prosecuting district where the charges are pending against me.

Date:  3/30/23

_____
_Defendant's signature_

_____
_Signature of defendant's attorney_

Angela Chuang
_Printed name of defendant's attorney_

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

USA,

                    Plaintiff,

          v.

ANASTASSIA KREZOUB,

                    Defendant.

Case No.3:23-mj-70348-MAG-1  (LJC)

Charging District's Case No.

8:23-mj-00164-DUTY

### COMMITMENT TO ANOTHER DISTRICT

The defendant has been ordered to appear in the Central District of California

The defendant:        ( ) will retain an attorney.

                      (X) is requesting court-appointed counsel.

The defendant remains in custody after the initial appearance.

**IT IS ORDERED:**  The United States Marshal must transport the defendant, together with a copy of this order, to the charging district and deliver the defendant to the United States Marshal for that district, or to another officer authorized to receive the defendant.  The Marshal or officer of the charging district should immediately notify the United States Attorney and the Clerk of the Clerk for that district of the defendant's arrival so that further proceedings may be promptly scheduled.  The Clerk of this district must promptly transmit the papers and any bail to the charging district.

Dated: March 30, 2023

LISA J. CISNEROS
United States Magistrate Judge

United States District Court
Northern District of California