CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
TERRA D. CASTILLO LAUGHTON (Bar No. 321683)
(E Mail: terra_laughton@fd.org)
Deputy Federal Public Defender
411 West Fourth Street, Suite 7110
Santa Ana, California 92701-4598
Telephone: (714) 338-4500
Facsimile: (714) 338-4520

Attorneys for Defendant
ANASTASSIA KREZOUB

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ANASTASSIA KREZOUB,<br>aka "Sylvia Kass,"<br><br>Defendant. | Case No. 8:23-cr-00042-CJC<br><br>**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS COUNT 1 OF THE INDICTMENT UNDER THE FIRST AMENDMENT**<br><br>Trial Date: May 28, 2024<br>Hearing Date: November 27, 2023<br>Hearing Time: 9:00 a.m. |

Defendant Anastassia Krezoub, through her attorney of record Deputy Federal Public Defender Terra Castillo Laughton, hereby submits her Reply in support of Defendant's Motion to Dismiss Count 1 of the Indictment Under the First Amendment, ECF No. 33.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: November 6, 2023     By  */s/ Terra D. Castillo Laughton*
                                TERRA D. CASTILLO LAUGHTON
                                Deputy Federal Public Defender

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Through its opposition and supporting exhibits, the government attempts to amend the indictment without returning to the grand jury, or at least distract from the Constitutional problems with Count 1. To be clear: Ms. Krezoub's contention is not that the government must specify in Count 1 "each and every communication that makes up the illegal course of conduct." ECF No. 41 ("Opp.") at 12 n.7. But when the government charges a defendant based purely on her speech and alleges specific communications as the basis for that charge, as it did here, those communications must satisfy the First Amendment. Here, they do not.

Focusing on the indictment itself, as this Court must on a motion to dismiss, the government's arguments fail one by one. The indictment alleges nothing about the truth or falsity of any communications Ms. Krezoub purportedly sent, nor does it include the messages the government now argues could constitute unprotected true threats. The government therefore cannot rely on the defamation or true threats exceptions to the First Amendment. Nor does the "speech integral to criminal conduct" exception apply. Speech is not integral to criminal conduct simply because the speech itself is prohibited. And the government has failed to establish that Ms. Krezoub's speech should be considered integral to extortion, a crime separately charged in the indictment of which Ms. Krezoub has not been convicted. Count 1 should be dismissed.

## II. ARGUMENT

### A. This Court should decline to consider the government's evidence and limit its inquiry to the indictment itself.

The government has submitted over 100 pages of communications allegedly sent by Ms. Krezoub, in an attempt to reframe the issues and supplement the allegations in the indictment. *See* ECF No. 40 (notice of manual filing under seal). It is black-letter law that in assessing a motion to dismiss, the Court is "bound by the four corners of the

indictment." *See, e.g.*, *United States v. Lyle*, 742 F.3d 434, 436 (9th Cir. 2014) (cleaned up); *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002) ("The indictment either states an offense or it doesn't. There is no reason to conduct an evidentiary hearing."). The Court should therefore decline the government's invitation to consider additional evidence. *See United States v. Jensen*, 93 F.3d 667, 669 (9th Cir. 1996) (district court erred in considering documentation provided by defendants on a motion to dismiss); *United States v. Lien*, 982 F. Supp. 2d 1184, 1187 (E.D. Wash. 2013) (declining to consider additional facts offered by the government and granting motion to dismiss).

The government acknowledges these principles but asserts this case is different for any number of reasons, all of which are incorrect. To begin, it argues that cases like *Boren* stands for the proposition that a court may look beyond the indictment when deciding any motion to dismiss involving "violations of defendant's constitutional rights." Opp. at 10 (citing *Boren*, 278 F.3d at 914); *id.* at 2 n.1 (same). Not so. *Boren* recites, but does not apply, the proposition that a court may take evidence and make factual determinations when deciding whether an "indictment violates the defendant's right against double jeopardy." 278 F.3d at 914; *id.* at 917 (finding district court incorrectly held an evidentiary hearing and holding allegations were sufficient based on "only the four corners of the . . . indictment"). Unlike a double jeopardy challenge, here there are no threshold factual issues the Court must decide to resolve Ms. Krezoub's narrow motion to dismiss Count 1 under the First Amendment.

The government's reliance on *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448 (9th Cir. 1986), also fails. Opp. at 10. There, the Ninth Circuit affirmed the district court's decision to defer the factual issue presented by the defendant's motion to dismiss because it overlapped with the evidence to be presented at trial. *Id.* at 1452-53. *Shortt* in no way suggests courts should consider anything more than the indictment in assessing a motion to dismiss, and instead affirms the opposite approach. For similar reasons, the government's reliance on *United States v. Fanyo-Patchou*,

Opp. at 17, is misplaced. *See United States v. Fanyo-Patchou*, 2020 WL 4816296 (W.D. Wash. Aug. 19, 2020), at *2 (denying defendant's as-applied challenge to stalking charge as premature because it "relies on disputed facts that do not appear in the indictment"). Unlike in *Shortt* and *Fanyo-Patchou*, Ms. Krezoub's motion offers no evidence outside the indictment and presents no factual issues for this Court to decide.

The true threats cases the government relies on fare no better. Opp. at 21. True, the court in *United States v. Toltzis* stated it was considering "the entire factual context surrounding [defendant's] statements" but only "*as alleged in the indictment.*" *Toltzis*, 2016 WL 3479084, at *3 (N.D. Cal. June 27, 2016) (emphasis added). Contrary to the government's characterization, the *Toltzis* court did not look "beyond the indictment" at all. Opp. at 21. Nor could it have, as neither party attached any exhibits to their briefing. Indeed, in defending against Mr. Toltzis's motion to dismiss, the government, unlike here, took the proper approach of relying exclusively on the indictment and asserted "[t]here is no basis to look beyond the allegations of the Indictment." *United States v. Toltzis*, 5:14-cr-00567-RMW (N.D. Cal.), ECF No. 41. Moreover, the cases *Toltzis* relied upon for the proposition that context should be considered were decided after verdicts at trial—not on a motion to dismiss—when it is appropriate to consider all the evidence presented. *Toltzis*, 2016 WL 3479084, at *3 (citing *Planned Parenthood of Columbia/Willamette Inc. v. Am. Coal. of Life Activists*, 244 F.3d 1007, 1078 (9th Cir. 2001); *United States v. Bagdasarian*, 652 F.3d 1113, 1123 (9th Cir. 2011)).

Finally in *Weiss*, it was the *defense* who initially submitted exhibits in support of its motion to dismiss; the government then followed suit by submitting additional evidence with its opposition. *Compare* Opp. at 21-22 (citing *United States v. Weiss*, 475 F. Supp. 3d 1015 (N.D. Cal. 2020), *rev'd and remanded*, No. 20-10283, 2021 WL 6116629 (9th Cir. Dec. 27, 2021)), *with United States v. Weiss*, 3:20-cr-00013-CRB-1 (N.D. Cal.), ECF Nos. 15, 19. Because neither party objected to the consideration of

evidence beyond the indictment, there was no need for Judge Breyer or the Ninth Circuit to engage deeply with this issue. In contrast here, Ms. Krezoub disputes the propriety of relying on the government's exhibits and any consideration of those documents would be over her strenuous objection.

The question before this Court is straightforward: does Count 1 as articulated in the indictment satisfy the First Amendment? This Court should follow well-established law and limit its inquiry to the indictment itself.

### B. Count 1 alleges pure speech and must satisfy the First Amendment.

The government does not meaningfully dispute that Count 1 implicates the First Amendment. Although it asserts that Section 2261A(2)(B) generally prohibits conduct, not speech, this ignores that Ms. Krezoub's challenge is as-applied, not facial. *Compare* Opp. at 11, *with* ECF No. 33 ("Mot.") at 4.[1] The government attempts to recast the nineteen alleged communications in Count 1 by describing them as "statements *and actions*," but fails to identify a single non-speech action. Opp. at 11 (emphasis added); *see also id.* at 12 (asserting without explanation that Ms. Krezoub "is being prosecuted for her conduct"). Nor could it. Count 1 consists of the following alleged communications by Ms. Krezoub: thirteen text messages or series of text messages; four emails; and two police reports. ECF No. 18 at ¶2. It is plain that Count 1 charges only speech and must satisfy the First Amendment.

---

[1] *Osinger*'s holding that Section 2261A on its face regulates conduct, not speech, is not implicated by Ms. Krezoub's as-applied challenge. *See United States v. Osinger*, 753 F.3d 939, 944 (9th Cir. 2014). Nevertheless, it is worth noting that *Osinger*'s reasoning on this point does not engage with the fact that the conduct targeted by the statute—conduct intended to harass or intimidate that causes emotional distress—may be expressive conduct protected as speech. *Id.*; *see also United States v. Ackell*, 907 F.3d 67, 73 (1st Cir. 2018) (Section 2261A "could reach highly expressive conduct"). Although *Ackell* ultimately agreed that Section 2261A targets conduct, it is not clear how the examples of "unprotected conduct" the court discussed meet the statutory elements without expressing some type of message. *Id.*

### C. The "speech integral to criminal conduct" exception does not salvage Count 1.

The government's primary argument is that the speech alleged in Count 1 is unprotected under the First Amendment because it constitutes "speech integral to criminal conduct." Opp. at 13-18. Specifically, it argues that all of Ms. Krezoub's alleged speech "lost protection because its 'sole immediate object' was criminal conduct"—namely to harass and intimidate, to extort and defame, and to instill in the alleged victim fear of serious threats of violence. *Id*. at 16. For the reasons explained below and in Ms. Krezoub's motion, the speech alleged in Count 1 does not constitute defamation or true threats. This leaves two potential hooks for criminal conduct to which Ms. Krezoub's speech could be integral: the stalking itself and extortion.

The government's argument that Ms. Krezoub's speech is integral to her cyberstalking has been rejected by courts and scholars as "fatally circular." *See Weiss*, 475 F. Supp. 3d at 1033, *rev'd and remanded on other grounds*, No. 20-10283, 2021 WL 6116629 (9th Cir. Dec. 27, 2021). In *Weiss*, Judge Breyer clarified that the "speech integral to criminal conduct" exception "does *not* mean that Congress can make a law criminalizing otherwise-protected speech, and then, because a defendant's speech violates the law, deem the speech to be 'speech integral to criminal conduct.'" *Weiss*, 475 F. Supp. 3d at 1033 (emphasis added); *see also United States v. Sryniawski*, 48 F.4th 583, 588 (8th Cir. 2022) (rejecting as "circular and unpersuasive" the argument that defendant's emails were integral to "the criminal conduct of cyberstalking itself"). Eugene Volokh opines that this "should be obvious, since the whole point of modern First Amendment doctrine is to protect speech against many laws that make such speech illegal." Eugene Volokh, *The 'Speech Integral to Criminal*

*Conduct' Exception*, 101 Cornell L. Rev. 981, 987 (2016).[2] Rather, there must be some separate criminal, non-speech conduct to which the speech is integral.

*Osinger* does not call for a different result. As noted in Ms. Krezoub's motion, *Osinger* involved stalking that consisted of both speech and non-speech conduct, which is what triggered the "integral to criminal conduct" exception. Mot. at 8 n.3 (citing *United States v. Osinger*, 753 F.3d 939, 941 (9th Cir. 2014); *id.* at 950-51 (concurrence of Watford, J.)). If there were any doubt from the opinion itself, courts interpreting *Osinger* make this clear. *See, e.g.*, *Weiss*, 475 F. Supp. 3d at 1034 ("[h]ad Osinger not done anything but engage in free speech, the 'speech integral to criminal conduct' exception should not have applied"); *Sryniawski*, 48 F.4th at 588 (citing *Osinger* for the proposition that "the speech must be integral to conduct that constitutes another offense that does not involve protected speech, such as . . . *in-person harassment*") (emphasis added).

Thus, the government's assertion that "no court has required the presence of both speech and non-speech conduct . . . for the exception to apply" is simply incorrect. Opp. at 17. This requirement goes to the very core of the exception—whether the speech is integral to some other, punishable *conduct*—and is traceable back to *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490 (1949). *See, e.g.*, *Osinger*, 753 F.3d at 950 (concurrence of Watford, J.) (describing the facts of *Giboney* as involving a labor union "engaged in *non-speech conduct*") (emphasis added); *Weiss*, 475 F. Supp. 3d at 1034 (discussing *Giboney* and noting "[t]he existence of a separate unlawful *act* is key") (emphasis added); *see also* Opp. at 14 (describing *Osinger* as "similar to *Giboney*" because it involved "both speech and non-speech conduct"). Unlike in *Osinger*, where there was non-speech conduct on which to hinge the exception, Ms. Krezoub is charged

---

[2] Professor Volokh criticizes *Osinger* on this basis and argues more broadly that courts need to "explain and cabin" the scope of the "integral to criminal conduct" exception. Volokh, 101 Cornell L. Rev. at 984, 1040-42.

only for her speech. The "speech integral to criminal conduct" exception does not apply.

In a lengthy footnote, the government concedes that cases involving pure speech, like this one, may require a different analysis. Opp. at 15 n.9. It cites district courts that have dismissed stalking counts under the First Amendment, but argues those cases are distinguishable. *Id.* (citing *United States v. Cassidy*, 814 F. Supp. 2d 574, 579 (D. Md. 2011) and *United States v. Cook*, 472 F. Supp. 3d 326, 328-331 (N.D. Miss. 2020)).[3] That *Cassidy* and *Cook* may not be on all fours with this case is of no moment. There is no requirement that speech be on a matter of public concern to be protected, and this Court is well-equipped to apply First Amendment doctrine as articulated by binding case law.

That leaves the government's argument that Ms. Krezoub's speech is integral to her alleged extortion. Opp. at 18-19; *id.* at 16. This conflates the two counts charged in the indictment. The cyberstalking statute charged in Count 1 does not require, or even contemplate, extortionate conduct. *See* 18 U.S.C. § 2261A(2)(B) (prohibiting a course of conduct "with the intent to harass [or] intimidate" that causes substantial emotional distress). In contrast, the extortion statute charged in Count 2 explicitly requires threats sent with an "intent to extort." *See* 18 U.S.C. § 875(d). Ms. Krezoub's motion challenges only Count 1, not the extortion charged in Count 2. Opp. at 18. Count 2 is a single, generic allegation that includes no specific communications; it should not affect whether Count 1 satisfies the First Amendment.

The government's only authority on this point is an Eighth Circuit case decided after the defendant was convicted at trial of both extortion and stalking. Opp. at 19 (citing *United States v. Petrovic*, 701 F.3d 849 (8th Cir. 2012)). *Petrovic* is clearly

---

[3] In those cases, the district courts observed that speech complaining of misconduct by a public entity, or that speaks to a public figure's qualifications as a leader, is a matter of public concern. *Cook*, 472 F. Supp. 3d at 328; *Cassidy*, 814 F. Supp. 2d at 579. While the alleged victim here is not a public figure in the traditional sense, there is no question he was a leader within his organization and that misconduct by him, as reported by Ms. Krezoub, bore on his fitness for that role.

7

distinguishable from this case, where Ms. Krezoub has not been convicted of extortion. *See United States v. Sryniawski*, 48 F.4th 583 (8th Cir. 2022) (holding, ten years after *Petrovic*, that "integral to criminal conduct" exception did not apply where defendant was convicted at trial of cyberstalking but acquitted of extortion). Moreover, while it may make sense to take a broad view of a case after trial, including considering all charges against a defendant, the same does not apply to a pre-trial motion to dismiss aimed at only a portion of the indictment. In any event, the government cites no Ninth Circuit precedent to support its view that Count 2 can somehow save Count 1.

To the extent the government contends that the communications alleged in Count 1 are themselves extortionate and thus unprotected, it fails to provide the court with relevant authority. Opp. at 18-19; *id.* at 12-13. Its reliance on *Planned Parenthood* is misplaced. Opp. at 12-13 (citing *Planned Parenthood*, 244 F.3d at 1015 n.8). There, the Ninth Circuit observed in dictum in a footnote that extortionate speech is not constitutionally protected, relying on *Watts v. United States*, 394 U.S. 705 (1969). But *Watts* is a true threats case and does not speak to extortion. Moreover, *Planned Parenthood* was subsequently reheard *en banc* and the later opinion says nothing about extortion. *Planned Parenthood of Columbia/Willamette Inc. v. Am. Coal. of Life Activists*, 290 F.3d 1058 (9th Cir. 2002). Even if correct, this argument would apply to, at most, a subset of the allegations in Count 1. Opp. at 18-19. At a minimum, the remaining allegations, constituting the bulk of the alleged cyberstalking, should be stricken. Fed. R. Crim. P. 7(d); *see also* Mot. at 3 n.1.

**D.    The government's exhibits do not change the fact that the communications alleged in Count 1 are not true threats.**

The government concedes most of the allegations in Count 1 fail to meet the standard for true threats. Opp. at 19-20 ("[W]hile the government does not contend that all of defendant's statements were threats . . . , *certain statements* of defendant's speech are unprotected true threats.") (emphasis added). It is left to argue that a handful of messages Ms. Krezoub allegedly sent the victim, but that are absent from the

8

indictment, "could be considered" true threats by a jury, namely: an alleged threat to have a member of the victim's family violently attacked; an alleged threat to take "revenge" overseas; and an alleged statement that her father could "shoot" the victim. *Id.* at 20, 22. Because none of these communications are alleged in the indictment, they cannot be considered. *See* Part II.A above. The government's claim that these threats are "referenced" in the indictment is misleading. Opp. at 20. The indictment refers to the *date* June 29, 2022, when the messages were purportedly sent, but does not include or describe the messages themselves.

To the extent the government is arguing that paragraph 2(h) of the indictment is a true threat, this fails for the reasons articulated in Ms. Krezoub's motion. Opp. at 20; Mot. at 6. The Ninth Circuit's unpublished decision in *Weiss* does not affect the analysis. *United States v. Weiss*, No. 20-10283, 2021 WL 6116629 (9th Cir. Dec. 27, 2021). There, the defendant referenced a specific third party carrying out the threatened violence, "described when and how the threat would be carried out," and there was evidence before the court that Senator McConnell's staff perceived the messages as threats. *Id.* at *2. None of these factors are alleged in Count 1. Even if the Court finds that 2(h) sufficiently alleges a true threat, Count 1 should still be dismissed because a single message does not constitute a "course of conduct" as a matter of law. Opp. at 11 (citing 18 U.S.C. § 2266(2)'s definition: a "pattern of conduct composed of two or more acts").

E. **The defamation doctrine is plainly inapplicable.**

The government asserts in a single paragraph that Ms. Krezoub's statements constitute defamation and are therefore unprotected under the First Amendment. Opp. at 19. Even if this argument were correct, the government concedes it would permit criminalizing, at most, "defendant's emails to the victim's employer accusing him of

9

sexual assault and other crimes." *Id.*[4] It would do nothing to revive the other fifteen communications alleged in Count 1, which remain protected speech. More fundamentally, the government's argument relies on an unproven assertion that is not even alleged in the indictment: that Ms. Krezoub's reports of criminal behavior by the alleged victim were false. *Id.* (citing cases making clear that falsity is an element of defamation). And despite the government's acknowledgment of the well-established principle that there can be no "summary trial of the evidence" on a motion to dismiss, *id.* at 10, it nevertheless asks this court to assume that the reports were false based on what the government believes the evidence at trial "will show," *id.* at 4 n.3. The Court should reject this contention out of hand.

### III. CONCLUSION

For the foregoing reasons and those discussed in her opening motion, Ms. Krezoub respectfully requests that the Court dismiss Count 1 of the indictment pursuant to the First Amendment.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: November 6, 2023      By  */s/ Terra D. Castillo Laughton*
TERRA CASTILLO LAUGHTON
Deputy Federal Public Defender

---

[4] The government agrees Ms. Krezoub's police reports are likely protected. Opp. at 16 ("[I]t's true that some isolated aspects of defendant's speech might have been entitled to First Amendment protection, such as the filing of police reports").