**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION**

**HONORABLE CORMAC J. CARNEY, U.S. DISTRICT JUDGE**

UNITED STATES OF AMERICA,      )
                               )
                Plaintiff,     )   **CERTIFIED TRANSCRIPT**
                               )
        vs.                    )
                               )   Case No.
ANASTASSIA KREZOUB,            )   8:23-cr-00042-CJC-1
                               )
                Defendant.     )
_____)

REPORTER'S TRANSCRIPT OF PROCEEDINGS

SENTENCING

MONDAY, MAY 20, 2024

10:17 A.M.

SANTA ANA, CALIFORNIA

**DEBBIE HINO-SPAAN, CSR 7953, CRR**
FEDERAL OFFICIAL COURT REPORTER
411 WEST 4TH STREET, ROOM 1-053
SANTA ANA, CA 92701
dhinospaan@yahoo.com

**UNITED STATES DISTRICT COURT**

```
 1                    APPEARANCES OF COUNSEL:

 2

 3   FOR PLAINTIFF:

 4           E. MARTIN ESTRADA
             United States Attorney
 5           BY:  ANDREW M. ROACH
                  Assistant United States Attorney
 6           312 North Spring Street
             Suite 1500
 7           Los Angeles, California 90012
             213-894-0306
 8           andrew.roach@usdoj.gov

 9   FOR DEFENDANT:

10           CUAUHTÉMOC ORTEGA, FEDERAL PUBLIC DEFENDER
             BY:  TERRA CASTILLO LAUGHTON
11                Deputy Federal Public Defender
             411 West 4th Street
12           Suite 7110
             Santa Ana, California 92701
13           714-338-4526
             terra_laughton@fd.org

14   ALSO PRESENT:

15           Anna Tutundjian, Attorney at Law, Sidley Austin

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT

| | |
|---|---|
| 1 | **SANTA ANA, CALIFORNIA; MONDAY, MAY 20, 2024** |
| 2 | **10:17 A.M.** |
| 3 | **- - -** |
| 4 | |

10:17AM 5    THE COURTROOM DEPUTY:  Calling Item 2, SACR-23-42,

6    United States of America vs. Anastassia Krezoub.

7    Counsel, please state your appearances for the

8    record.

9    MR. ROACH:  Good morning, Your Honor.  Andrew Roach

10:17AM 10   on behalf of the Government.  And with me at counsel table is

11   counsel for the victim who will make an appearance herself.

12   MS. TUTUNDJIAN:  Good morning, Your Honor.  Anna

13   Tutundjian from Sidley Austin.

14   THE COURT:  Good morning to both of you.

10:17AM 15   MS. LAUGHTON:  Good morning, Your Honor Terra

16   Castillo Laughton of the Federal Public Defender's Office on

17   behalf of Anastassia Krezoub, who is present in court in

18   custody.

19   THE COURT:  Hello, Ms. Krezoub.

10:17AM 20   And hello, Ms. Laughton.

21   Well, Melissa probably handed out the tentative, my

22   sentencing memorandum.  So I thought I'd use that as a baseline

23   for people to argue their respective positions.  Why don't I

24   hear from the Government first and then we'll turn it over to

10:18AM 25   the defense.

1           MS. TUTUNDJIAN:  Your Honor, if I may please make a

2    request before we get started.

3           THE COURT:  Yes.

4           MS. TUTUNDJIAN:  We would request that the Court and

10:18AM 5    the parties maintain the confidentiality of the victim and only

6    refer to the victim by a pseudonym during today's proceedings,

7    in accordance with the Crime Victims' Rights Act, and the cases

8    that we cited to in the victim impact statement, including

9    *U.S. v. Robinson,* 2009 WL 137319, and *U.S. v. Patkar,* 2008

10:18AM 10   WL 233062.

11          Similarly, we would request that any details from

12   the police reports be omitted and that today's proceedings be

13   sealed.

14          THE COURT:  Well, let's take -- first of all, the

10:19AM 15   victim, I think we should refer to the initials or "victim."  I

16   don't think we have to state the name on the record.  As far as

17   maintaining this transcript of the proceeding under seal, I

18   don't think there's a legal basis to do that.  This is a matter

19   of public interest.  The charges were public.  If this case

10:19AM 20   went to trial, this would not be maintained under seal.

21          So, Counsel, what's your respective positions on

22   maintaining the transcript of the proceeding under seal?

23          MS. LAUGHTON:  Your Honor, frankly, I think it

24   depends on the conversations that we're about to have with the

10:19AM 25   Court.  I could see a scenario in which the hearing doesn't

         1    disclose any protected information or Victim PII.  I could also

         2    see a scenario in which it does.

         3               In the latter scenario, the defense doesn't object

         4    to sealing this proceeding or the transcript from this

10:20AM  5    proceeding.  But I think, in light of the Court's tentative, I

         6    think it is possible that all the remarks this morning may not

         7    require any sealing at all.

         8               THE COURT:  Okay.

         9               MR. ROACH:  The Government -- I think the best way

10:20AM 10    to approach it is probably just to refer to it as "the victim"

        11    and not even use initials.  I think we can dodge a lot of

        12    issues that way.

        13               And as far as sealing, the Government takes no

        14    position.  We defer to the Court on that.  There are obviously

10:20AM 15    considerations.  But as defense counsel said, if we use generic

        16    "victim" and are careful about how we discuss certain things, I

        17    think we can avoid those issues and not have to seal those

        18    things.

        19               THE COURT:  All right.  So let's just see how it

10:20AM 20    plays out.

        21               MS. TUTUNDJIAN:  Thank you, Your Honor.

        22               MR. ROACH:  But I think it's my time to speak now.

        23    That's a good segue to the Court's sentencing memorandum.  I

        24    think we would like to discuss a potentially sealing or making

10:20AM 25    redactions on it because, as we discussed, you know, with

1    reference to initials and references to certain police reports

2    of things that never went anywhere, there are issues that I

3    think do present concerns to the victim and do potentially

4    infringe on the victim's rights under the Crime Victims' Rights

10:21AM  5    Act.

6             THE COURT:  Okay.  Well, why don't we go through

7    that slowly.  And I want to protect everybody's rights.  But as

8    you had indicated, the public does have a strong interest in

9    all criminal proceedings.  So I want to be careful too.

10:21AM 10             MR. ROACH:  Right.  It could be, Your Honor, the

11    parties discuss afterwards about proposed redactions the Court

12    can make and submit them to the Court --

13             THE COURT:  That would be fine.

14             MR. ROACH:  -- if that would be easier.

10:21AM 15             But thank you, Your Honor.  I've read the Court's

16    tentative.  I tried to read it twice now.  It's very thorough,

17    and I appreciate the time and effort the Court put into it.

18    And I recognize where the Court's view on certain things are,

19    and I understand and I respect those decisions.

10:22AM 20             There are a couple things that I would just like to

21    say that I don't think were incorporated into the tentative.

22    And I just want to address them to make sure the Court is aware

23    of them.

24             THE COURT:  Please do.

10:22AM 25             MR. ROACH:  Pardon me?

1              THE COURT:  I said "please do."

2              MR. ROACH:  Oh, yes.  And I don't know if it will

3    actually affect ultimately the Court's decision at the sentence

4    here, but I think they are worth noting for the record.

10:22AM 5              First and foremost, this case was charged because

6    defendant wouldn't stop.  Defendant wouldn't stop harassing the

7    victim.  Defendant wouldn't stop her conduct.  And that's why

8    this case was charged.  And I know there are some arguments

9    that were made that there was a power imbalance or dynamic, and

10:22AM 10   it was maybe even vindictive, but that's why it was charged,

11   because defendant wouldn't stop.

12              And the Government has detailed in a lot of filings

13   and given the Court a sample of some of the conduct that

14   occurred for a 15-month period.  But that's what was occurring.

10:23AM 15   And it was occurring nonstop.  And it was occurring because the

16   victim wasn't even doing anything.  He wasn't responding.  He

17   would try to block his numbers.  He just wanted it to stop and

18   defendant would continue to do so.  So that's why this case was

19   charged, to stop that continuing crime.

10:23AM 20              With respect to some of the allegations that were

21   made by the victim, I think it's important to understand the

22   timeline of how this case and how the very brief relationship

23   between the victim and the defendant occurred and that what

24   happened later on with respect to allegations.

10:23AM 25              So there was a very, very brief relationship between

1    the victim and the defendant in Boston.  I mean very brief

2    because it occurred on a couple weekend trips.  The victim was

3    there.  They met a couple times.  And this can be tracked by

4    the contemporaneous text messages that were exchanged between

10:24AM 5    the victim and the defendant throughout.  And many of them are

6    in our filing, the reference in the Complaint.

7         And the victim and the defendant stopped having any

8    meetings, no more in-person meetings in October, after which

9    there was some continuous discussions where defendant started

10:24AM 10    to ask for certain things, asked for certain items, asked for

11    gifts.

12         And when the victim didn't reciprocate, that's where

13    there was a change in tone.  And there was a change in tone

14    that continued for a month -- a month or so.  And then finally

10:24AM 15    in December 2021, there's the first police report.  And that

16    police report obviously accuses certain things.  And then as

17    soon as that police report is filed, that defendant takes that

18    police report and sends it to the victim as part of her way to

19    intimidate him.  And then this continued for several more

10:25AM 20    months.  Several more months where she'd ask for more,

21    demanding more, sending vulgar things.

22         And that culminated in another police report.  This

23    police report filed at a different jurisdiction.  This police

24    report now filed in the state of California, where the first

10:25AM 25    police report was filed in Boston.  And this police report

raises new things that the defendant never mentioned in her

prior police reports that apparently happened on their last day

in October.

I think it's worth saying that the police report's

filed under seal.  And I think it's just worth noting even in

the police report, when they took that report from the

defendant where she was accusing the victim of crime, even the

police report [sic] who took that report said it was illogical

and inconsistent.

And so the Government, in looking at the timing of

the police reports, looking at her text messages, looking at

her tone and tenor, and looking at what she was asking, clearly

sees that these police reports were filed as a way to gain

leverage against the victim.  It was a way to gain what she

wanted, which was money, which was lavish gifts, which is that

sort.

So the Government mentions that because I don't know

if the Court fully understood all those issues.  I'm willing to

go through the timeline and the affidavits where it breaks down

the timeline.  In fact, there are texts in December where the

victim says "I regret having sex with you."

And then four months later she's changing it to a

different -- a completely different tone, telling a local

police department after she sent the victim thousands of texts

threatening to defame his reputation, threatening him, scaring

1    him.

2         So I wanted to make that point clear.  It might

3    ultimately not change the sentence.  And I think the Court has

4    very good reasons for why it would exercise its discretion

10:27AM 5    under 3553(a) factors for the sentence the Court is

6    considering.  But I do think that that part of the story is not

7    in the Court's -- in the Court's tentative which I want to make

8    sure the Court sees.  And also it parlays into the concerns we

9    have about why potentially this should be redacted or portions

10:27AM 10   are sealed because it doesn't really present, you know, perhaps

11   what was really going on here and what the Government sees is

12   going on here.

13         THE COURT:  I appreciate that.

14         MR. ROACH:  With respect to the -- the loss amount,

10:28AM 15   I recognize that the defense and the Court view that

16   differently.  The Government does believe the loss amount is

17   over a million dollars.  I will not belabor that point.  I will

18   just mention that the case law that was cited by defense

19   counsel, the *Mirabal* case, I think it really doesn't apply to

10:28AM 20   this case, because that was more of a case of what could be

21   admissible at trial, and that was a case of admitting

22   Government prior statements -- prior statements in a prior plea

23   agreement about which person was the aggressor and whether the

24   defense could use that at trial.  This is a completely

10:28AM 25   different situation.  So I don't think that necessarily

1    forecloses the Government from arguing more.

2         I understand that defense and the Court view that

3    the Government shouldn't do it on the eve of sentencing.  And

4    to the extent we didn't notice this earlier, it was a situation

10:29AM  5    where I, as Government counsel, when I start to get back to the

6    books again, I notice some facts that I forgot.  So to the

7    extent that that happened, I apologize, but it wasn't any

8    surprise on our part.  But we've made our argument.  The Court

9    has made its decision, and we will move on.

10:29AM 10         I guess the last thing with respect to the sentence,

11    obviously the Government is asking for a 30-month sentence.

12    This Court's tentative is a 14-month sentence, which amounts to

13    time served, and a forthwith release to immigration authorities

14    so the defendant can be removed to France.

10:29AM 15         The Government continues, I think, to believe that a

16    time-served sentence is a little bit insufficient in this case.

17    I guess what gives the Government pause is, you know, we are

18    here really because this defendant can't stop.  There are other

19    victims in this case.  I know defense counsel has raised,

10:30AM 20    "Well, we don't have all those facts," but there are other

21    victims here.  We've seen the facts.

22         There have been police reports where this defendant

23    has been harassing people in hotels in Boston, harassing former

24    romantic partners.  It's a serious problem.  And she doesn't

10:30AM 25    seem to stop for -- even in this case when the FBI went to talk

to her twice and raised issues about the victim and raised

issues about this, she continued her behavior.  And so it gives

the Government real pause about defendant.

And I think the Government mentioned here, too, I

think the Government's concerned a little bit about the

defendant's lack of acceptance of responsibility.  In terms of

the guidelines, the Government is not disagreeing.  She gets

the reduction because she pled guilty.

But in terms of exercising this Court's discretion

under 3553(a) factors, this Court is well aware that you have

different defendants that appear before you.  And some do the

bare minimum plea, and some really come before you, they write

letters, they apologize for their conduct, they apologize for

the harm they've caused others, and those people -- that

really -- is really accepting of responsibility for not only to

plead guilty, but to actually stand there and say "I'm sorry."

We've never seen that in this case.

Instead, what really -- what the Government's view

is we have a defendant -- and I understand there's some mental

health issues going on here, but her inability to recognize or

accept fault is almost, in the Government's view, it's

shocking.  And I think that is what gets her into this

situation.  It's got us into a situation with prior victims and

prior situations.

So I do think that that is worthy of the Court's

consideration when deciding what to -- to exercise its
discretion under 3553(a), just the level of acceptance of
responsibility.

　　　　Lastly, the Court is not inclined to impose
supervised release, but I would consider and -- ask the Court
to consider that it might want to.  Because even if the Court
orders that she be released to immigration authorities, there's
no guarantee that she will be removed even though she's here
unlawfully.

　　　　And in the case that, for some reason in the
immigration system, which neither this Court nor the Government
controls in this respect, the United States Attorney's Office,
to the extent she is not removed from this country and to the
extent there is a gaffe and somehow she remains in this
country, then she is without supervision and there are really
no guardrails.  So it might be a safer course in this instance
to impose a period of supervised release.

　　　　Obviously, if she is removed from this country, the
supervised release is somewhat superfluous because it wouldn't
apply to her, but it would provide a belt-and-suspenders
approach just to ensure that there are no oversights in her
removal.

　　　　But unless the Court has any questions, I'll give a
quick summation here, Your Honor.

　　　　　　　THE COURT:  No.  I appreciate it.

1          MR. ROACH:  Your Honor, obviously, I think we

2    believe this is a serious case and we would not have brought

3    this if it wasn't continuing harm and the defendant continuing

4    to harass the victim.  And when we began this investigation, we

10:34AM 5    learned that it wasn't just this victim.  We saw others.  We

6    saw her continue to even harass people and sending racial slurs

7    to people in hotels in Boston.  Defendant just wouldn't stop.

8    And I hope, if there's a silver lining out of any of this, that

9    the defendant learns that she has to stop.  She can't continue

10:34AM 10   this behavior.

11          And the Court made very valid points that 14 months

12   hopefully has been a sufficient punishment to teach her that

13   this is not appropriate behavior, this is not how to respond to

14   things.  The Government continues to believe that a slightly

10:34AM 15   stiffer sentence is appropriate given all the harm and given

16   the lack of responsibility, but ultimately, it's this Court's

17   discretion.  And with that, the Government will submit,

18   Your Honor.

19          THE COURT:  I appreciate your reasons, and very

10:35AM 20   respectful.

21          Ms. Laughton.

22          MS. LAUGHTON:  Thank you, Your Honor, and thank you

23   for the tentative.

24          I'll focus on the points made by the Government

10:35AM 25   since we, of course, largely, you know -- or entirely agree

1    with the tentative and believe the Court got the analysis

2    right.

3              In terms of the points made by the Government, I

4    think, you know, Mr. Roach talked a lot about the timeline

10:35AM 5    here, and I understand why he says that the timeline is key.

6    The timeline does also include a break in communications by

7    Ms. Krezoub between December of 2021 and March of 2022.  This

8    was an issue Your Honor may have seen in the exhibit we

9    attached to our reply brief in discussing the joint statement

10:36AM 10   to submit to this Court in advance of Ms. Krezoub's change of

11   plea.  So that was the reason that we had asked for that

12   carve-out.  I think if the Court is going to look at the

13   timeline, it needs to look at all components of the timeline.

14             In terms of the allegations made by Ms. Krezoub

10:36AM 15   against the victim, the Government, of course, thinks that

16   there are inconsistencies in those reports.  I'll just point

17   out that there are lots of reasons why the victim of sexual

18   assaults or sexual misconduct may not feel comfortable talking

19   about all components of that in one instance.  And, in fact,

10:36AM 20   the 302s of Ms. Krezoub's conversations with the FBI reflect

21   that that may have been what's going on here.

22             She has expressed -- she expressed some concern in

23   talking about everything all at once which may explain why one

24   of the police reports talks about one incident and another

10:37AM 25   police report talks about another incident.

In terms of the loss amount issue, I think it's very clear that *Mirabal* is squarely on point. The context of which the issue came up is obviously different. Mr. Roach is right about that. It was a hearsay analysis at trial. But at its core, that decision is about whether the Government can get out from its agreements and file documents before the Court. And the Ninth Circuit said "no," and this Court I think appropriately is saying "no" as well here.

You know, this $1 million text message, this has been well-known to all of the parties and the Court from the beginning of this case. I won't belabor this because I know the Court agrees with our analysis on this, but I think the idea that the $1 million figure should factor in at all I think is incorrect.

In terms of the overall sentence, I mean we agree, of course, with the Court's intended sentence of time served with no supervised release. I think as the Court recognizes the 14 months that Ms. Krezoub has spent in custody, her first time ever in custody in her life has been significant for her. She's been isolated from her family, and this has been -- this has certainly been a wake-up call for her and a difficult period in her life. The MDC records reflect that -- we attached to our opening brief -- and they reflect that she has experienced sort of increased mental health symptoms since being in custody.

1          On this issue of the FBI having spoken to

2    Ms. Krezoub twice, we addressed this in our reply brief.  And

3    as we pointed out there, it's not clear from the 302s of those

4    phone conversations what exactly the FBI told her about the

10:39AM 5    status of their investigation and intended charges against her.

6    The summary of those discussions focused on a discussion of her

7    relationship with the victim here, the police reports that she

8    filed.  So I don't think it's correct to say that simply

9    because she had conversations with the FBI, she went on

10:39AM 10   undeterred.  I don't think that's what the record reflects.

11          On the acceptance of responsibility point, the

12   Government continues to suggest that she hasn't accepted

13   responsibility, and we, of course, agree with this Court's

14   reasoning on that; she has.  I'm not sure what more the

10:39AM 15   Government would have her do.  She pled open to both charges

16   that the Government charged her with, and she did so, as the

17   Court has recognized, at some cost.

18          In terms of turning down a plea offer for the

19   reasons we've been discussing, that would have guaranteed her a

10:40AM 20   statutory maximum sentence of no more than two years.  So she

21   went forward; she pled open.  She didn't belabor that decision.

22   She made that decision very quickly after this Court denied her

23   motion to dismiss the first count.  And so I think it's very

24   clear that she has accepted responsibility here.

10:40AM 25          On this issue of the other victims, as we explain in

**UNITED STATES DISTRICT COURT**

our briefing and as this Court addresses in one of its

footnotes in the tentative, there is one victim in this case.

It is the victim that is identified in -- by initials in the

Court's tentative, and that's the only victim here.  We know

10:40AM that because that's the only person that the Probation Office

sent a victim restitution packet to.

So these other victims that are discussed or

mentioned in the PSR that the Government also relies on should

not be considered by the court.  That's why we asked the Court

10:40AM to strike those paragraphs from the PSR.  They're not relevant

conduct, that's undisputed, and there's no reliable information

before the Court that the Court could base any kind of

determination on.

Your Honor, as to supervised release, we agree that

10:41AM it's not appropriate to impose supervised release here.

However, if the Court intends to do that, we still have

outstanding objections to the set of conditions related to

computer use and digital device use and monitoring as well as

to the specific language of the no contact order.  Not that we

10:41AM would object to a no contact order, but again, specifically

about this issue of there being one victim in this case and

making that clear, we think that that would be important.

THE COURT:  Is it your understanding she is going to

get deported?

10:41AM MS. LAUGHTON:  That's my understanding.  And I think

1   that's what the PSR suggests as well.  I mean, I don't have any

2   additional information beyond what's mentioned in the PSR, but

3   yes, my understanding is she has no legal status and that she

4   would be subject to deportation.

10:42AM  5            THE COURT:  Is there an immigration hold on her?

6            MS. LAUGHTON:  I believe it's addressed in the PSR,

7   and I thought that it said "yes."

8            THE COURT:  That's what I thought.  But I --

9            MR. ROACH:  I can address that.  My understanding is

10:42AM 10   there is an immigration hold on her, Your Honor.  But as the

11   Court is aware, sometimes there are still lapses with those

12   holds.

13            THE COURT:  Okay.  So I'm just trying to minimize

14   unnecessary costs by everybody.  If there is an immigration

10:42AM 15   hold, I assume she's going to be deported.  So...

16            MS. LAUGHTON:  We agree.

17            THE COURT:  It's like the immigration cases I have,

18   we don't put supervised release on it.  So I'm not inclined to

19   impose supervised release.

10:42AM 20            MS. LAUGHTON:  Understood, Your Honor.  And just out

21   of an abundance of caution, we had objected to one of the

22   paragraphs in the PSR that addresses one of these other victims

23   and specifically sort of a restraining order or injunction that

24   that individual had sought against Ms. Krezoub.  The probation

10:43AM 25   officer's addendum suggests that she intended to revise that

paragraph in the PSR to reflect that the restraining order was

denied and the case dismissed.  But the revised PSR actually

doesn't reflect that change.  So we want to make that objection

clear for the record and we would ideally like that the PSR be

10:43AM  amended to reflect that, that addition that I think

Officer Wang intended to make but did not.  I can point to the

specific portion of the PSR if that would be helpful.

Lastly, Your Honor, I don't take the Court's

tentative to rely on this idea that Ms. Krezoub had an impact

10:44AM specifically on the victim's employment here.  But to the

extent that the Court is persuaded by that point, I would just

refer the Court back to our reply brief, which I think suggests

three main points as to why there's reason to doubt that

characterization.

10:44AM If the Court has any additional questions, I would

be happy to address those.

THE COURT:  One thing you presented was the prior

incident with the nanny, the *au pair*.  Under the Evidence Code,

I'm entitled to consider that even if there was a trial.  They

10:44AM say character evidence in the area of sexual misconduct is

allowable.

What in my order troubles you as far as going

public?

MS. LAUGHTON:  Your Honor, I think we, in good

10:45AM faith, throughout this case have made an effort to ensure that

1    the identity and any identification information of the victim

2    and his family members has been kept out of the public record.

3    There is a protective order in place in this case, and we have

4    steadfastly conformed to those requirements.

10:45AM 5          THE COURT:  But as you know, just so everybody

6    understands, charging is a different posture.  If this case had

7    gone to trial, all this would have been part of the public

8    record.  We didn't have a trial.

9          MS. LAUGHTON:  That's right.

10:45AM 10         THE COURT:  So now my question is, all right, in my

11   order, do you feel should either be redacted, excluded?  I'm

12   not wed to the wording of this order.  If both parties feel

13   there are certain references that should be revised, deleted,

14   I'm okay with that as long as you can give me a legal basis for

10:46AM 15   doing so.

16         But what -- I don't want to get on my high horse --

17   what makes this country so unique is public access and

18   everything's out in the open.  And I have over 21 years of

19   experience.  I've seen a lot of nasty, terrible things.  What I

10:46AM 20   see in this case is not nearly as nasty as some of the things

21   that I have seen that have been part of the public record,

22   particularly in the death penalty *habeas* litigation when we

23   used to have evidentiary hearings.  Usually those people, they

24   are serial killers, they're sadistic.  I've had child

10:47AM 25   pornography, other cases.  It's horrible.  That's part of the

public record.  The victims, of course, their names are not,

but they have to testify in court.

So with that, I'm reluctant to start editing and

deleting unless you can tell me, "No.  Here's something that

10:47AM 5  you really need to protect."  We've talked about we can just

say "the victim" instead of "S.M.," if you want.  I don't have

a problem with that.

MS. LAUGHTON:  I certainly don't object to that.  I

mean, I think I hear the Court's point, and I think there are

10:47AM 10  components of this that would be helpful to be public; for

example, the Court's ruling on the actual loss versus intended

loss.  As this Court is aware, that contributes to sort of the

developing case law on that issue within the Central District.

So I do think that potentially could be helpful to future cases

10:48AM 15  and future litigants.

That being said, it's not Ms. Krezoub's concern

about what's in here, but Ms. Krezoub does not object to

removing the initials of the victim and replacing that with the

word "victim" to further anonymize it.

10:48AM 20  THE COURT:  Mr. Roach.

MR. ROACH:  Yes, Your Honor.  I want to stand up.  I

think Ms. Castillo Laughton -- Ms. Laughton Castillo addressed

it.  She's in a unique standpoint.  She's only there to

represent the defendant in this case.  So there's a Victims'

10:48AM 25  Right advocate here.  I think the issue of where the

1    Government, and I'm sure the victim's advocate, will mention is

2    I think the legal hook is under the victim crime rights act,

3    victims have a right to not have embarrassment and to not have

4    their identity or be able to be publicly identified.

10:48AM 5        And I think there are a couple things with what the

6    Court said.  First, the Court said if there was a trial, that

7    some of this stuff that the prior police reports would get in

8    would be a matter of public concern.  I'm actually not sure

9    they would.  Obviously, the Court ultimately decides what

10:49AM 10   evidence gets into trial.  And if the evidence gets into trial,

11   then obviously anyone could come into it.  But under Evidence

12   Code rule 413, I'm not sure that would get in unless the

13   defendant could make a claim that she needs to get these in to

14   protect her constitutional rights.

10:49AM 15       But I just use that as a backdrop of there was no

16   trial here.  It's a little bit different of a posture.  And

17   because of that, I think there are still some things on the

18   other side of the scale that should weigh into protecting the

19   victim's anonymity here.

10:49AM 20       Because if there was a trial, we would be able to

21   produce more evidence, and people would be able to get a better

22   context and actually evaluate those facts.  And ultimately,

23   there would be a decision from the jury, and the public can

24   look and say, "Okay, here's what I think the truth is."

10:50AM 25       But I think in this situation where all the evidence

hasn't come forward, there hasn't been a trial for the issue.

I think how the order is drafted now, especially that it's

making reference to, you know, really police reports, which I

think one of these police reports says it was exceptionally

10:50AM  clear, police reports that never went anywhere, no charges were

filed, at the end of the day, it's sort of a perverse situation

where this order could sort of accomplish much of the

reputational harm that defendant was trying to do.

And so one of the big reasons to, you know, bring

10:50AM  this case, too, was to avoid the further reputational harm that

defendant was doing.  So I think there's a way, though.  And I

would ask the Court maybe the best way is, you know, defense

counsel and I can confer afterwards and we can take this and we

can propose redactions for the Court's consideration.

10:51AM  We are mindful of the First Amendment

considerations.  I'm mindful that, as defense counsel said, the

Court's loss analysis has some benefit to the development of

case law in this district and elsewhere.  But I'm also mindful

of the other principles and the other things we have a balance

10:51AM  here which is protection of the victim especially in light of

some of the accusations here that never went anywhere.  And I

don't think this presents the full course of conduct.

So with that respect, I would ask the Court what is

the Court's current thinking?  Is the Court amenable to defense

10:51AM  counsel and the Government reviewing this and proposing

1    redactions?

2             THE COURT:  Absolutely.

3             MR. ROACH:  Okay.

4             THE COURT:  We can talk procedurally how we want to

10:51AM  5    do it.  And it's a little unclear to me under the Victims'

6    Rights Act whether counsel has a right to make statements.

7             Now, if the actual victim was here, he would have a

8    right to say whatever he wants, and I would give him that

9    right.  But I didn't -- I haven't been in a position where a

10:52AM 10   legal representative has standing to make arguments or speak.

11            MR. ROACH:  Well, I've seen that being done before,

12   and it's really no different than an attorney speaking on

13   behalf of their client in any situation.  An attorney is always

14   an agent of the principal, and an attorney always stands in the

10:52AM 15   shoes of the principal.  So just as the victim could stand

16   here, the attorney's authority comes from the position of the

17   victim.

18            THE COURT:  And I'm not trying to be contentious,

19   and I'm not saying I won't allow it, but I've had cases

10:52AM 20   where -- it's usually in the fraud context where a lawyer shows

21   up instead of the actual victim and there is big fighting

22   between the parties.  And, in fact, the Government in the cases

23   I'm thinking agrees with the defense.  The lawyer shouldn't be

24   advocating and making arguments that's -- in trying to get in

10:53AM 25   hearsay information and other stuff through the record that I

have.  I'm probably not making sense.

MR. ROACH:  No, I understand.  I think if you have a
victim, an attorney is an advocate.  The victim represented
here is not really being an advocate; they're just protecting
the victim's rights.  But I understand the point.  If the
victim stood up and started arguing the guideline
calculation --

THE COURT:  Or started arguing the 3553 analysis and
"Here's the sentence I want."

MR. ROACH:  That's a different situation that's
occurring here.

THE COURT:  I don't think that's what the Victims'
Rights Act -- and it hasn't happened.  She's very respectful.

MR. ROACH:  I'll make sure of that, Your Honor.

THE COURT:  So she made the argument that she wants
to protect the identity of the victim.  Duly noted.  I'm okay
with lawyers seeing what, if anything, they can agree on that
should be redacted or deleted.  It doesn't have to be redacted.

Problem with redactions, I'm not a big fan of
redactions.  Redaction means that I've got to have one for the
public record and one that's not for the public record.  I can
do that.  But if there are certain things I can change, such as
instead of saying "S.M.," just say "victim," I'm okay with
that.

The police report, the document itself is under

```
 1  seal.  But in my experience at evidentiary hearings and trials,
 2  with cross-examination when the agent is on the stand, which I
 3  assume the defense would call if the Government didn't call, it
 4  would come out what was said in the report, and it would be
 5  part of the record, if you follow me.
 6            MR. ROACH:  Yeah.
 7            THE COURT:  The report itself would not be
 8  admissible as an exhibit, but the contents of it would come
 9  out.
10            MR. ROACH:  Well, in that situation, Your Honor, is
11  the Court amenable to just sealing the entire memorandum?
12            THE COURT:  You know, there's a lot of people coming
13  in.
14            Melissa, I think we probably need to clear the
15  courtroom because a lot of this is under seal.
16            THE COURTROOM DEPUTY:  You want me to lock it?
17            THE COURT:  Yeah.  So I'm going to have to ask those
18  people to leave.
19            MR. ROACH:  Your Honor, the gentleman in the front
20  is one of the case agents.
21            THE COURT:  I gathered that.
22            MR. ROACH:  I told him to dress up for this hearing.
23            THE COURT:  So I wouldn't be a fan of redacting the
24  order in its entirety because, again, I feel the public has the
25  right to know about what happened with these charges and why
```

10:57AM

the sentence was imposed.  So I'm not inclined to do that.  But
like I said, if there are certain words or paragraphs that you
feel at this point, given its procedural posture, should not be
part of the public record, I'm open to hearing and the basis
for that.

        And maybe the most efficient way is, Mr. Roach, you
do get with Ms. Laughton and see if you can reach an agreement
on that.  I can, you know, impose the sentence without filing
this for a few days.  That's not going to be an obstacle.

        MR. ROACH:  Yes.  So I will take the Court's
invitation on that, and I will get with defense counsel and
we'll confer about -- we'll propose the redactions based upon
this.

        THE COURT:  Great.

        MR. ROACH:  And one last thing.  I will, Your Honor,
make another run at I do think supervised release still, I
think -- I understand the Court's concerns.  It doesn't want to
burden the system, but I do think it is relevant here because,
again, I understand that she's supposed to be removed from this
country, but there is a whole host of things that can go awry
with that situation.  She could contest her civil immigration
proceedings and, for some reason, she could qualify for relief.
I don't have a crystal ball how that works out.  That would be
before a different judge.

        So there are a lot of different situations that

could occur, and so it is not a certainty that she will be
removed from this country, that she will be removed from this
country promptly, nor that she will be released and then
removed from this country.

So in all those circumstances, the Government does
believe that a period of supervised release is necessary to
protect the victim in this case, because it could very well be
that she gets out, you know, in a matter of weeks or something
because of some issue in the immigration system and there is
really nothing to stop her from contacting the victim.

And we've seen it again -- as I began, the reason
why this case was brought was because the defendant just would
not stop.  And so I do think that there are, you know, terms of
supervised release that can be imposed -- maybe not all the
extensive ones, but I think at minimum a no contact order with
the victim and the victim's family is necessary.  Otherwise,
you know, we could very well be back here again.

THE COURT:  Gotcha.  I'll make a decision whether
I'm going to have supervised release or not, but this is a good
time to allow Ms. Krezoub an opportunity to make any statement
that she would like to make.

THE DEFENDANT:  I just want to make a short -- I'm
sorry for any wrongdoings and harm.  And I -- I didn't intend
to make things like this.  Thank you.

THE COURT:  All right.  Ms. Laughton, let's address

the issue of supervised release.  Mr. Roach, I think, does make

good points that I don't know what's going to happen.  Are you

opposed to one year of supervised release?  We can talk about

the conditions.  But do you still feel like the tentative says

that there should be no supervised release?  And if no

supervised release, tell me why.

            MS. LAUGHTON:  We do agree with the Court's

tentative that supervised release is not necessary here because

we do think that deportation will occur.  The second count in

this case is under 18 U.S.C. 875, which is listed as an

aggravated felony under the relevant immigration statute.  So

we do think that's going to happen.

            That being said, if the Court is inclined to impose

supervised release, we would ask for Probation's recommended

length of one year rather than I believe the Government's

request of two years.  And I would like to address the

conditions, which I can do now.

            THE COURT:  Let's do it.

            MS. LAUGHTON:  So the probation officer addressed

most of our concerns related to the proposed conditions, but we

do have remaining objections to two categories.  The first is

what are now in the revised recommendation letter.  It was

listed as Conditions 11 through 16.  Those relate to a search

condition, computer monitoring, device restrictions.

            And the probation officer, in her addendum,

explained again that her basis for including these, which are

traditionally reserved for sex offense cases, of which this

case is not, of course -- her asserted basis for including them

is that a phone was used in this case to perpetrate the offense

11:02AM 5    and social media accounts were used.  It does not address the

statutory requirement that any imposition must also be

appropriately tailored, that it involved no greater deprivation

of liberty than is reasonably necessary.

And I think here these conditions are not reasonably

11:02AM 10   necessary here.  It's not enough that Ms. Krezoub just used a

phone, which the Supreme Court has recognized is such an

intrinsic part of daily life at this point that it could be

confused for a feature of human anatomy.  These proposed

conditions are incredibly intrusive.  They would control in

11:03AM 15   detail Ms. Krezoub's ability to use the internet.

The probation officer would have veto power over her

ability to use more than one email, more than one social media

account.  She would have to provide passwords for her devices.

They would all be subject to search.  So we do have concerns

11:03AM 20   about how far those conditions go.

THE COURT:  So if I understand you, you said

Conditions 11 through 16?

MS. LAUGHTON:  That's correct, Your Honor.

THE COURT:  Mr. Roach, do you have any objection to

11:03AM 25   those conditions being stricken?

| | |
|---|---|
| 1 | MR. ROACH:  Your Honor, I think they should be |
| 2 | imposed, so I would object.  But I would offer a compromise, |
| 3 | perhaps, that those -- that the Court could -- again, we think |
| 4 | they are certainly necessary and should be imposed for the |
| 11:03AM 5 | reasons that a probation officer who would actually do the |
| 6 | enforcement recommended them.  But if the Court is inclined -- |
| 7 | I've seen this with other judges -- that the Court can order |
| 8 | that these are not imposed, but the probation officer can later |
| 9 | on come and request the Court impose these if there is |
| 11:04AM 10 | something that occurs in the future that gives the probation |
| 11 | officer concern that these should be imposed. |
| 12 | So it's not necessarily that the Court has to impose |
| 13 | them now.  Conditions 11 through 16 could sort of be held in |
| 14 | abeyance, if you will, and that if there is some issue, namely, |
| 11:04AM 15 | if the defendant violates Conditions 17, 18, and 19, the no |
| 16 | contact provisions -- the no contact probation, if she violates |
| 17 | those, then there would be good cause for the probation officer |
| 18 | to come before this Court again and ask this Court to impose |
| 19 | those conditions. |
| 11:04AM 20 | THE COURT:  I agree. |
| 21 | MS. LAUGHTON:  And if I could address that briefly. |
| 22 | I mean, I think that's what's contemplated by the supervised |
| 23 | release framework, that any -- |
| 24 | THE COURT:  It is. |
| 11:05AM 25 | MS. LAUGHTON:  -- any conditions that she has to |

abide by, should she violate those, there could be a hearing

and potential modifications.

            THE COURT:  And instead of custody, modify.  Or

custody and modify the terms and conditions.

            MS. LAUGHTON:  That's correct.  And Ms. Krezoub is

fully aware that were she to violate any conditions of

supervised release, she risks additional custody time.

            The second bucket, Your Honor, relates to the no

contact orders in the revised recommendation letter.  These are

Conditions 17, 18, and 19.  We don't object to a no contact

order.  Our concern is that because multiple victims or

purported victims have been discussed as part of the sentencing

proceeding and briefing, we are concerned about these

conditions not naming the actual victim in this case.

            Now, I know Mr. Roach is going to raise concerns

about -- and the victim's representative as well -- about

potentially identifying that information, but I do think as

currently written, it's not clear.  It's actually even less

clear now under the revised version than it was previously

because the word "victim" has been pluralized now in response

to the Government's request.

            The Government's other line edits that have been

adopted into this revised recommendation letter, we don't

necessarily object to them.  I do think they're superfluous

because they're addressed in the previous language, but our

```
 1   objections to 17, 18, and 19 is specifically concerns about

 2   vagueness and not specifying the actual victim in this case.

 3            THE COURT:  Well, how do we resolve this?  Because I

 4   got to believe this comes up all the time in state court.  We

 5   usually don't have these types of orders in a lot of our

 6   sentencings, but it has come up.  How do I remedy it?

 7            Because I agree with your concerns.  My order is in

 8   trouble if it's not clear.  The person has to have clear notice

 9   of who she has to stay away from and have no contact with.  So

10   how do I do that and, at the same time, protect the

11   confidentiality of the victims?

12            MS. LAUGHTON:  So I think there's potentially two

13   options.  One is to try to specify, to first make "victims"

14   singular again so that it refers to a single victim.  Maybe we

15   could add additional language saying "the victim in this case"

16   or "the charged victim in this case" or something to make

17   specific that we're not talking about these other alleged

18   victims that are not a part of this proceeding.  The

19   alternative, I suppose, would be to maybe have two versions,

20   one that's public and one that's not.

21            THE COURT:  I guess "Defendant shall not knowingly

22   contact or attempt to contact the victim or his family

23   members."  Is that clear enough, do you think, if I say "the

24   victim or his family members"?

25            MS. LAUGHTON:  I would prefer adding some language
```

11:06AM (line 5)
11:07AM (line 10)
11:07AM (line 15)
11:07AM (line 20)
11:08AM (line 25)

1    that it's specifically tied to this case, just because as the

2    record currently stands, even the revised PSR does discuss

3    additional purported victims.

4         THE COURT:  All right.  So "shall not knowingly

11:08AM 5    contact or attempt to contact the victim in this case or his

6    family members."

7         MR. ROACH:  Your Honor, just for the record, I

8    don't -- I'm not sure these are necessary.  I'm clumsily trying

9    to pull up the Central District of California's standard terms

11:09AM 10   and conditions when someone's on bond, because I think it

11   generally uses the phrase "victims."  I don't know if it

12   specifies.

13        THE COURT:  But a lot of our standard conditions,

14   Mr. Roach, have been held unlawful.

11:09AM 15        MR. ROACH:  But some have not, Your Honor.

16        THE COURT:  Some have not.  But I have -- if I'm

17   having a supervised release violation hearing, I've got to have

18   "Here's the condition, and you violated it and you had contact

19   with this person."  So it seems to me I've got to give her

11:09AM 20   notice specifically who the victim is.  And the victim in this

21   case I'm comfortable with.

22        MR. ROACH:  Very well.  Then if we are going to

23   wordsmith -- I would say maybe not in this case -- why don't

24   you say "the victim alleged in the Indictment."  I think that

11:10AM 25   provides a greater level of specificity.

**UNITED STATES DISTRICT COURT**

1          THE COURT:  I like that.  Victim alleged in the

2    Indictment.  Okay.

3          MR. ROACH:  And, Your Honor --

4          THE COURT:  Do we need 18?  Isn't 18 -- if you can't

11:10AM 5    have contact, then you can't be using it to threaten or harass.

6          MR. ROACH:  I guess the -- so 18 is a little bit

7    broader in the sense that it deals with the notion of third

8    parties, which is something I think is still relevant.  I think

9    that's why it has the intent to harass and intimidate.  So,

11:11AM 10   obviously, she should not be contacting the victim at all.

11          But then with respect to third parties, she

12    shouldn't be contacting third parties with the intent to

13    intimidate, harass, or demean the victims.  So in this case,

14    obviously, the victim was contacting -- excuse me, the

11:11AM 15   defendant was contacting the victim's employer with the purpose

16    to intimidate and harass them.  So there still needs to be some

17    sort of condition where that -- you know, she is prohibited

18    from still contacting others as a means to intimidate the

19    victim.

11:11AM 20          THE COURT:  Okay.  So let's go through it slow.  I

21    have "Defendant shall not knowingly contact or attempt to

22    contact with the intent to threaten, harass, or intimidate the

23    victim's family or any third party" -- "third party" is a

24    little --

11:12AM 25          Ms. Laughton, can you help me here?

**UNITED STATES DISTRICT COURT**

1           -- "intimidate the" --

2           MS. LAUGHTON:  You're in paragraph 18?

3           THE COURT:  Correct.

4           MS. LAUGHTON:  I would suggest "or intimidate the

11:12AM 5   victim" singular or "the victim's," singular possessive,

6   "families, any third parties, including, but not limited to,"

7   and then the same -- the same singular "victim."

8           THE COURT:  Try me again.  "To threaten the

9   victim's," apostrophe, or --

11:13AM 10          MS. LAUGHTON:  So the first -- on the second line

11  "or intimidate the victim," that victim should be made singular

12  by deleting the "s."  "Victim's family" should remain

13  possessive but become singular so that the apostrophe should

14  move from the end to between the "m" and the "s."

11:13AM 15          THE COURT:  Or I'll just say "his" --

16          MS. LAUGHTON:  That works too.

17          THE COURT:  -- "family" -- "the victim or his

18  family."  Okay.

19          MS. LAUGHTON:  And then on the next.

11:13AM 20          THE COURT:  Or any -- or the --

21          Go ahead.  What were you going to say?

22          MS. LAUGHTON:  Well, I think the same changes should

23  be made to the next line.  So slightly different change,

24  "including but not limited to the victim."  So I'm now on the

11:14AM 25  third line of the paragraph.

1          THE COURT:  So you deleted "any third party"?

2    "Threaten or intimidate the victim" --

3          MS. LAUGHTON:  "Or the victim's family," any third

4    party.

11:14AM  5          THE COURT:  -- "or his family"; right?

6          MS. LAUGHTON:  Right.

7          THE COURT:  "Intimidate the victim or his family."

8    Okay.  And then delete "victims" or "victim's families," and

9    then delete "any third party"?  Or do you need that?

11:14AM 10          MR. ROACH:  I think we were saying -- if I

11   understand defense counsel, I think her suggestion is a global

12   change that "victim" should always be singular, and "victim's"

13   apostrophe should be singular.  I think we do -- the Government

14   does take a position that third party is still relevant and

11:14AM 15   necessary given her conduct in this case.  And so then we could

16   keep that language but modify accordingly, that in Condition

17   Number 18, the later references, "victims" obviously becomes

18   singular victim and "victim's families."  But the reference

19   with any third parties "including, but not limited to," I guess

11:15AM 20   the Court could strike "including, but not limited to," and

21   then strike "victims" -- well, I guess you need to leave that.

22   "Including but not limited to the third parties of employer,

23   school, classmates, friends, acquaintances, employers, and

24   such.  I think that might have been more confusing.

11:15AM 25          THE COURT:  No.  I think I --

1            MR. ROACH:  With Condition 18, all you're saying is

2    make plural singular.

3            MS. LAUGHTON:  Correct.

4            MR. ROACH:  This is like lawyers trying to do math

11:15AM 5    in public, Your Honor.

6            THE COURT:  Give me one second.

7            "Defendant shall not knowingly contact or attempt to

8    contact with the intent to threaten, harass, or intimidate the

9    victim or his family any third party, including, but not

11:16AM 10   limited to, the victim or his" -- "the victim's," apostrophe

11   "s," "or his family's," apostrophe "s," "employer, school,

12   classmates, friends, acquaintances, employees, or agents,

13   directly or indirectly, by any means, including, but not

14   limited to, in person, by mail," blah, blah, blah.  How's that?

11:16AM 15           MS. LAUGHTON:  I think that will work.  And then

16   there's the issue of 19.

17           THE COURT:  "Shall not attempt to locate the

18   victim" --

19           MS. LAUGHTON:  Correct.

11:16AM 20           THE COURT:  -- "or any member of his family or

21   attempt to" -- "concerning the whereabouts, phone number, email

22   address, or other personal identifiers of the victim or any

23   members of his family."

24           MS. LAUGHTON:  That will do it, Your Honor.

11:17AM 25           THE COURT:  Mr. Roach, is that okay?

1          MR. ROACH:  Yes, Your Honor.

2          THE COURT:  Okay.  So the old 17 will be now 11, 18

3    will be 12, 19 will be 13.  And I will have one year of

4    supervised release.

11:17AM  5          So getting to the first page, my intent would be,

6    "Pursuant to the Sentencing Reform Act of 1984, it is the

7    judgment of the Court that the defendant, Anastassia Krezoub,

8    is hereby committed on Counts One and Two of the Indictment to

9    the custody of Bureau of Prisons for a credit time term of 14

11:18AM 10   months.  This term consists of 14 months on each of Counts One

11   and Two of the Indictment to be served concurrently.  The

12   marshal is hereby ordered to transfer her to the custody of

13   immigration authorities for deportation to France."

14         MR. ROACH:  Your Honor?

11:18AM 15         THE COURT:  Yes.

16         MR. ROACH:  If I may make a recommendation.  Is the

17   Court -- if the Court is doing time served, would it make more

18   sense and be cleaner if it's time served without a

19   specification of the quantity of time?  Because I know --

11:19AM 20   hopefully this is not something that comes to fruition, but in

21   the future I know that if you impose a specific number, it does

22   complicate things with credits and time overages and all sort

23   of thing.

24         THE COURT:  That's -- when I've done that in the

11:19AM 25   past, the clerk's office and BOP have balked and say "You can't

do it."  I don't understand why.  You're singing to the choir.
But that's why I've got to say "You're done and now you're on
supervised release" so I take it out of their hands, so to
speak.

11:19AM    MR. ROACH:  Very well.

THE COURT:  "The marshal is hereby ordered to
transfer her to the custody of immigration authorities for
deportation to France.  Ms. Krezoub is hereby placed on
supervised release for a term of one year.  This term consists
11:20AM  of one year on each of Counts One and Two of the Indictment.
All such terms to run concurrently under the following terms
and conditions."

And then we have the conditions we talked about.
Does that work?

11:20AM    MS. LAUGHTON:  So just to clarify, Your Honor,
looking at the revised recommendation letter from Probation,
it's Conditions One through Nine -- sorry, One through Ten, and
then it will skip from Ten, which is performing 20 hours of
community service, to now 11, which is the first of the three
11:20AM  no contact conditions?

THE COURT:  Correct.

MS. LAUGHTON:  And then it will have those three no
contact conditions as we just went through?

THE COURT:  11, 12 and 13.

11:20AM    MS. LAUGHTON:  Your Honor, just briefly on that --

```
  1   so that sounds good.  No objections to that.  Just briefly on

  2   the time served versus 14-month issue --

  3             THE COURT:  Yes.

  4             MS. LAUGHTON:  -- we're not quite at 14 months.  I

  5   think we're, by my calculation, maybe four days shy,

  6   potentially.  I do agree with Mr. Roach that I think the

  7   easiest thing would be to just sentence her to time served such

  8   that a release order could issue and then she could be

  9   transferred to immigration custody.

 10             THE COURT:  Two comments.  First of all, I'm not wed

 11   to it.  But again, I'm told that you got to issue an amended

 12   judgment order because this isn't good enough.  You have to

 13   give a specific day and time.  And I -- you're asking the wrong

 14   person why.  I don't know why, but they tell me I got to do it.

 15             Second of all, as everybody knows here, she has good

 16   time credit of two months because she's been in custody over a

 17   year.  So she gets -- my thinking is she's well served 14

 18   months' custody.  And if it was a 24-month sentence, she would

 19   get four months' credit.  You see what I'm saying?  So I

 20   thought 14 months -- because there's only a couple days left

 21   plus she's got two months in the bank, so to speak, credit.

 22             MR. ROACH:  Well, Your Honor, that might actually

 23   have the unintended consequence, though, of keeping her a

 24   little longer for the calculation to be made.  I know this is

 25   made by BOP.
```

**UNITED STATES DISTRICT COURT**

1      So I guess if both parties are recommending the

2   Court say "time served" and then if someone comes back and says

3   we did it wrong, you can blame us.

4      THE COURT:  All right.  If that's what you want, I'm

11:22AM 5   okay.  "Is hereby committed on Counts One of the Indictment to

6   the custody of prison" -- what do you want me to say?

7      MR. ROACH:  For a term of time served.

8      THE COURT:  Okay.  So then how do you deal with the

9   second sentence?

11:23AM 10      MR. ROACH:  I think you can omit that, Your Honor,

11   because now it's superfluous.  Or you can say, "This term

12   consists of the time served on each" -- "consists of the time

13   served on each of Counts One and Two of the Indictment," and

14   then strike the language "to be served concurrently."

11:24AM 15      So you can say, "This term consists of the time

16   served on each of Counts One and Two of the Indictment,"

17   period, and a new paragraph, the text there, "Upon release from

18   imprisonment" --

19      THE COURT:  Yeah.

11:24AM 20      MR. ROACH:  -- and so forth.

21      THE COURT:  Is there any legal reason why I cannot

22   impose that sentence?

23      MR. ROACH:  No, Your Honor.

24      MS. LAUGHTON:  No, Your Honor.

11:24AM 25      THE COURT:  Very well.

It is ordered that the defendant, Anastassia Krezoub shall pay to the United States a special assessment of $200 which is due immediately.  Pursuant to Guideline Section 5E1.12(a), all fines are waived as the Court finds that Ms. Krezoub has established that she is unable to pay and is not likely to become able to pay any fine.

Pursuant to the Sentencing Reform Act of 1984, it is the judgment of the Court that the defendant, Anastassia Krezoub, is hereby committed on Counts One and Two of the Indictment to the custody of Bureau of Prisons for a term of time served.  This term consists of the time served on each of Counts One and Two of the Indictment.

The Marshal is hereby ordered to transfer Ms. Krezoub to the custody of immigration authorities for deportation to France.

Ms. Krezoub is hereby placed on supervised release for a term of one year.  This term consists of one year on each of Counts One and Two of the Indictment, all such terms to run concurrently under the following terms and conditions:

Number 1.  She shall comply with the rules and regulations of the United States Probation and Pretrial Services Office and Second Amended General Order 20-04.

Number 2.  During the period of community supervision, she shall pay the special assessment in accordance with this judgment's orders pertaining to such payment.

Number 3.  She shall cooperate in the collection of
a DNA sample from her person.

Number 4.  She shall refrain from any unlawful use
of a controlled substance.  She shall submit to one drug test
within 15 days of release from custody and at least two
periodic drug tests thereafter, not to exceed eight tests per
month as directed by the probation officer.

Number 5.  She shall comply with the immigration
rules and regulations of the United States, and if deported
from this country, either voluntarily or involuntarily, not
reenter the United States illegally.  She is not required to
report to the Probation and Pretrial Services Office while
residing outside the United States.  However, within 72 hours
of release from any custody or any reentry to the United States
during the period of court-ordered supervision, she shall
report for instructions to the United States Probation Office
located at the United States Courthouse, 411 West 4th Street,
Santa Ana, California 92701-4597.

Number 6.  She shall not commit any violation of
local, state, or federal law or ordinance.

Number 7.  She shall participate in an outpatient
mental health treatment which may include evaluation and
counseling until discharged from the program by the treatment
provider with the approval of the probation officer.

Number 8.  As directed by the probation officer, she

```
 1    shall pay all or part of the costs of her court-ordered

 2    treatment to the aftercare contractors during the period of

 3    community supervision.  She shall provide payment and proof of

 4    payment as directed by the probation officer.  If she has no

 5    ability to pay, no payment shall be required.

 6         Number 9.  Ms. Krezoub's employment shall be

 7    approved by the probation officer, and any change in employment

 8    must be preapproved by the probation officer.  She shall submit

 9    the name and address of her proposed employer to the probation

10    officer at least ten days prior to any scheduled change.

11         Number 10.  When not employed or excused by the

12    probation officer for schooling, training, or other acceptable

13    means, she shall perform 20 hours of community service per week

14    as directed by the Probation and Pretrial Services Office.

15         Number 11.  Ms. Krezoub shall not knowingly contact

16    or attempt to contact the victim alleged in the Indictment or

17    his family members, directly or indirectly, by any means,

18    including, but not limited to, in person, by mail, telephone,

19    email, websites or other electronic service, text message or

20    other electronic means or through a third party.

21         Number 12.  Ms. Krezoub shall not knowingly contact

22    or attempt to contact with the intent to threaten, harass, or

23    intimidate the victim or his family, any third party,

24    including, but not limited to the victim's or his family's

25    employer, school, classmates, friends, acquaintances, employees
```

11:27AM (line 5)
11:28AM (line 10)
11:28AM (line 15)
11:28AM (line 20)
11:29AM (line 25)

1    or agents, directly or indirectly, by any means including, but

2    not limited to, in person, by mail, telephone, email, websites,

3    or other electronic service, text message or other electronic

4    means.  Threatening, harassing or intimidating communications

11:29AM  5    include any communications that has the intent to inflict

6    punishment --

7              There was a typo there, Melissa.

8              -- intent to inflict punishment, loss, pain, or

9    damage to another individual or the individual's property, is

11:29AM 10    meant to cause distress or alarm to an individual or is meant

11    to coerce into action or place under duress, whether it be

12    emotionally, physically, or financially, any individual.

13              Number 13.  Ms. Krezoub shall not attempt to locate

14    the victim or any member of his family or attempt to obtain

11:30AM 15    information concerning the whereabouts, phone numbers, email

16    addresses, or other personal identifiers of the victim or any

17    member of his family.

18              Ms. Krezoub, there's one other item I must discuss

19    with you.  You have a right to file with the Court above me

11:30AM 20    called the Ninth Circuit a Notice of Appeal if you feel that

21    your conviction is unlawful or if you feel the sentence that I

22    just imposed is unfair, is not right.

23              Filing a Notice of Appeal with the Ninth Circuit is

24    not a difficult process.  You just ask Ms. Laughton for the

11:30AM 25    form or you ask the clerk of the court for the form, you sign

```
 1   the form, and all your rights are preserved.  However,

 2   Ms. Krezoub, there's a very important time limitation of 14

 3   days.  If you wait longer than 14 days to file a Notice of

 4   Appeal, it will be too late; the Ninth Circuit will not

 5   consider it.  So if you're going to file a Notice of Appeal,

 6   please do so within 14 days.

 7            Do you have any questions for me about filing a

 8   Notice of Appeal?

 9            THE DEFENDANT:  No.  That's it.  Thank you.

10            THE COURT:  Mr. Roach?

11            MR. ROACH:  Forgive me, Your Honor.  I think there

12   were just a couple housekeeping procedures that the Government

13   overlooked.  I'm not sure the Court -- and I think it's all

14   implied in the record, but just to clarify, that the parties

15   and the defendant and defense counsel confirm that they

16   verified and discussed the Presentence Report prior to

17   sentencing.

18            MS. LAUGHTON:  Correct.  We did.

19            MR. ROACH:  And did the Court formally adopt its

20   calculation of the guidelines in the tentative?

21            THE COURT:  Yes.

22            MR. ROACH:  Okay.  Then I think we're good.

23            THE COURT:  I didn't say that explicitly, but yes, I

24   did.

25            MR. ROACH:  And to the extent that you were supposed
```

11:31AM (lines 5, 10, 15, 20)
11:32AM (line 25)

1    to say it before the sentence was imposed, does defendant waive

2    having to have the Court reread the whole sentence again?

3            MS. LAUGHTON:  I'm sorry, could you repeat that?

4            MR. ROACH:  I believe the Court was supposed to

11:32AM 5    formally adopt the advisory guidelines before imposing

6    sentence, and the Court did impliedly but did not explicitly.

7    And to the extent that the defendant has the right to have the

8    Court reimpose and reread the entire sentence after formally

9    adopting the advisory guideline, does defendant waive that?

11:32AM 10           MS. LAUGHTON:  So can I just clarify that?  The

11   Court is adopting its calculation as set forth in the

12   tentative.  Is that correct?

13           THE COURT:  Correct.  I'll be even clearer.  Base

14   offense of 9; no application of offense characteristic for loss

11:33AM 15   because there was no actual loss; three-level downward

16   adjustment for acceptance of responsibility; and a two-level --

17   excuse me, two-level downward adjustment for acceptance of

18   responsibility; and a two-level downward adjustment for being a

19   zero point offender.  So that at the end of the day is an

11:33AM 20   offense level of five and a criminal history Category I.  Her

21   Sentencing Guideline range is zero to six months' imprisonment.

22           And then, as far as the 3553 analysis, I have to

23   make sure that I've looked at the nature and circumstances of

24   the offense, history and characteristics of Ms. Krezoub.  I

11:34AM 25   have to make sure that I impose a sentence that reflects the

**UNITED STATES DISTRICT COURT**

1    seriousness of the offense, promotes respect for the law,

2    provides just punishment, that the sentence deters her and

3    others from engaging in the criminal conduct, sentence protects

4    the public from any further crimes she might commit, and that I

11:34AM 5    have to provide her with needed educational or vocational

6    training, medical care or other correctional treatment in the

7    most effective manner, and I have to avoid unwarranted

8    sentencing disparities among people who have been similarly

9    convicted and sentenced for this offense.

11:34AM 10        The sentencing memorandum that I prepared and

11    circulated to counsel, and hopefully Ms. Krezoub has had an

12    opportunity with counsel to go over, sets forth the guideline

13    range as well as the 3553 analysis that I've done.  And based

14    on that, I believe a credit time-served sentence is

11:35AM 15    appropriate.

16        Mr. Roach, I take no offense.  Anything further you

17    need me to say on the record on that?

18        MR. ROACH:  I think that is all right.  And I

19    apologize.  I should have said this before the Court imposed

11:35AM 20    the sentence, but to the extent we were supposed to say this

21    before the sentence was formally imposed, I just want to make

22    sure that defense counsel is okay with the fact that we did it

23    out of order.

24        I know we jumped around in this hearing, but to the

11:35AM 25    extent the defendant had the right to have the advisory

1    guidelines formally and explicitly stated on the record before

2    the sentence was imposed, the defendant waives that right?

3              MS. LAUGHTON:  Yes.  She understands the guidelines

4    calculation as articulated by the Court and doesn't object.

11:35AM 5              THE COURT:  As well as the 3553 analysis?

6              MS. LAUGHTON:  That's correct.

7              MR. ROACH:  Thank you, Your Honor.

8              THE COURT:  So what I'm going to need you -- how

9    much time do you need to get me what changes you would like

11:35AM 10   made or proposed be made for the sentencing memorandum?

11             MR. ROACH:  I would -- is a few days appropriate,

12   Your Honor?

13             THE COURT:  That would be fine.

14             MR. ROACH:  Could I ask that the CRD email us a

11:36AM 15   clean copy of this?  Because I have actually written on it, and

16   I'm sure defense counsel has as well.  So if we have a clean

17   copy, then we can file back under seal a clean copy with

18   highlighted parts that we propose for redaction.

19             THE COURT:  That would be fine.

11:36AM 20             MR. ROACH:  Thank you, Your Honor.

21             THE COURT:  Okay.

22             MR. ROACH:  Is by the -- by Friday?

23             THE COURT:  That would be fine.

24             MR. ROACH:  Thank you.

11:36AM 25             THE COURT:  Are we going to leave the initials in or

```
 1    is that a change we know we're going to make?
 2              MR. ROACH:  The Government would request we remove
 3    the initials.
 4              MS. LAUGHTON:  And we don't object to replacing the
 5    initials with "victim."
 6              THE COURT:  Okay.
 7              MR. ROACH:  There will be some other things too
 8    because the other police reports -- I'm not sure the other
 9    people involved in the police report -- we'll discuss it and
10    submit something for the Court.
11              THE COURT:  Okay.  That will be fine.  All right.
12    Thank you.
13              THE COURTROOM DEPUTY:  All rise.
14                   (Proceedings conclude at 11:36 a.m.)
15                             --oOo--
16
17
18
19
20
21
22
23
24
25
```

1            *CERTIFICATE OF OFFICIAL REPORTER*

2

3    COUNTY OF LOS ANGELES   )
                            )
4    STATE OF CALIFORNIA    )

5                I, DEBBIE HINO-SPAAN, FEDERAL OFFICIAL REALTIME

6    COURT REPORTER, in and for the United States District Court for

7    the Central District of California, do hereby certify that

8    pursuant to Section 753, Title 28, United States Code that the

9    foregoing is a true and correct transcript of the

10   stenographically reported proceedings held in the

11   above-entitled matter and that the transcript page format is in

12   conformance with the regulations of the Judicial Conference of

13   the United States.

14

15   *Date:  July 22, 2024*

16

17

18

19                            */S/ DEBBIE HINO-SPAAN*

20                            *Debbie Hino-Spaan, CSR No. 7953*
                             *Federal Official Court Reporter*
21

22

23

24

25